UNITED STATES of America, Plaintiff,

v.

Richard Rose McELRATH and Tyawanda Renee Anderson, Defendants.

No. Crim. 3–91–16 (1, 2).

United States District Court, D. Minnesota, Third Division.

April 1, 1991.

Margaret T. Burns, Asst. U.S. Atty., D. Minnesota, for government.

Thomas E. Johnson, Johnson, McClay & Nelson, St. Paul, Minn., for defendant McElrath.

Michael J. Majeski, St. Paul, Minn. and Katherian T. Roe, Federal Public Defender, Minneapolis, Minn., for defendant Anderson.

### ORDER

DEVITT, District Judge.

### INTRODUCTION

On February 6, 1991, a grand jury returned a two-count indictment against

Richard Rose McElrath ("McElrath") and Tyawanda Renee Anderson ("Anderson"). Count I of the indictment charges McElrath with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Count II charges McElrath and Anderson with conspiring to possess with intent to distribute sixteen grams or more of crack cocaine in violation of 21 U.S.C. § 846. On March 18, 1991 the court heard testimony and argument relevant to defendants' pretrial motions. The parties have since filed supplemental memoranda, and the court is prepared to rule.[1]

## BACKGROUND

On August 14, 1990, Minneapolis police officers executed a search warrant upon the lower floors of a duplex located at 1206 James Avenue North. The affidavit supporting the search warrant reveals that on August 7, 1990, a confidential, reliable informant (CRI) informed Minneapolis police officer Gerald Moore that drug sales were occurring at 1206 James. According to the CRI, several men living at the duplex had approached the CRI and asked whether the CRI wanted to purchase crack cocaine. Officer Moore stated in his affidavit that the CRI has provided Minneapolis police with reliable information in the past. This information has led police to arrest several individuals and recover large amounts of drugs and money. The information has also led to numerous convictions. Later that same day, August 7, officer Moore drove the CRI to an area near 1206 James. Supplied with a "pre-recorded" $20.00 bill, the CRI entered the ground floor of the duplex and emerged with crack cocaine some time later.

Based upon this information, Hennepin County District Judge Roberta Levy issued a warrant on August 10 authorizing police to search the "downstairs" of 1206 James. Upon executing the warrant on August 14,

officers discovered and seized, among other things, $711.00 in cash, two telephone pagers, a dagger, a Titan .25 caliber semi-automatic handgun, and a plastic bag containing suspected crack cocaine.

Police also arrested defendants McElrath and Anderson, who were present in the duplex. Officer Moore advised both McElrath and Anderson of their *Miranda* rights by reading a standard card carried by police officers. McElrath and Anderson responded that they understood their rights and neither asked to consult with an attorney. Both persons made statements to police. Subsequently, on August 15, officer Moore interviewed defendant McElrath in the Hennepin County Jail. Officer Moore again informed McElrath of his *Miranda* rights. McElrath stated that he understood his rights and wished to speak with officer Moore. During this interview, McElrath admitted to officer Moore ·that police discovered the .25 caliber semi-automatic handgun in McElrath's bedroom.

Approximately four months later, on December 28, 1990, police executed a second search warrant at 1206 James. The affidavit supporting this search warrant was completed by Minneapolis police officer Michael Doran and describes activity beginning on or about December 10, 1990. A CRI[2] informed officer Doran that the CRI had purchased crack cocaine from a black female named "Vante" residing in the lower level of the 1206 James duplex. The CRI also witnessed defendant Anderson sell crack cocaine to various customers. At the time she made these sales, Anderson resided in the upper unit of the duplex. The CRI also informed officer Doran that the CRI had seen numerous persons in both units of the duplex armed with handguns, and that various individuals in the neighborhood communicated through portable radios to warn each other of the presence of police. In his affidavit, officer

---

**1.** Both defendants make several pretrial motions relating to discovery. The court's *Standing Practice Order, Re: Criminal Motion Practice,* dated September 20, 1988 disposes of these motions. Hence, this memorandum order need only address (1) defendants' motions to suppress physical evidence, (2) defendants' motions to sever counts and defendants, (3) defendant McElrath's motion to amend the detention order, (4) defendant McElrath's motion for the

disclosure of the confidential informant, (5) defendant Anderson's motion to suppress statements.

**2.** It is unclear whether the CRI relied upon by officer Doran is a different individual than the CRI mentioned earlier and relied upon by officer Moore. In his affidavit, officer Doran attests sufficiently to the CRI's reliability.

Doran alleges that McElrath is a member of the Disciples street gang.

Based upon the information in officer Doran's affidavit, Hennepin County District Judge Kenneth Gill issued a search warrant on December 13, 1990. Under Minnesota law, the search warrant remained valid for ten days. Minn.Stat. § 626.15. However, Minneapolis police did not execute the warrant within the ten-day period imposed by statute. Officer Doran, presumably anticipating the expiration of the ten-day period, telephoned Judge Gill to inquire about extending the warrant beyond December 23, 1990. At the March 18 hearing on defendants' pretrial motions, officer Doran testified that he telephoned Judge Gill from the offices of the Minneapolis Police Department's fourth precinct, and reached the judge in his chambers. Officer Doran's written report of the conversation states that he placed the call on December 23. However, when informed on cross-examination that December 23, 1990 fell on a Sunday, officer Doran testified that the date recorded in his written report was incorrect because he telephoned Judge Gill on a "working day." Officer Doran testified subsequently that he did not recall with certainty the date he reached Judge Gill, but that he suspected it was Friday, December 21.

Officer Doran's report provides the following rationale to support the extension of the warrant:

> The search warrant was signed on 12/13/90 however was extended ten (10) days on 12/23/90 by the original signing Judge Honorable Gill, Hennepin County District Court. *According to CRI information the parties inside 1206 James Avenue North had spotted our surveillance and ceased drug trafficking and moved the evidence to a different location.*

(emphasis supplied). At the March 18 hearing, officer Doran elaborated upon the above-quoted portion of his report:

> The CRI informed me that our surveillance was spotted in the rear of 1206 James, and that because of that they immediately shut down business. The evidence was going to be moved to another location, and that the business would be shut down for a couple of days.

The CRI also told me that the business would resume in a couple of days, business as normal. So I take it from there that once a couple days had passed, the warrant would go back into effect and that address would still be the same.

Officer Doran was not sworn prior to or during the telephone conversation, nor did he provide Judge Gill with a copy of the original warrant or supporting affidavit. Judge Gill did not request that officer Doran subsequently provide an affidavit supporting the warrant extension. After hearing Officer Doran's representations that illegal activity at 1206 James had ceased, but would resume again "in a couple of days," Judge Gill extended the warrant to January 3, 1991. The entire telephone conversation lasted approximately five minutes. After obtaining the extension, Officer Doran made a notation at the bottom of page three of the warrant: "Extended to Jan. 3 of 91 by telephone—ok by Judge Gill." Prior to executing the warrant, officer Doran questioned a superior officer concerning the warrant's effectiveness. The superior opined that the warrant extension was valid.

Officers executed the warrant on December 28, 1990. Officers seized, among other things, $2,353.00 in cash, large chunks of suspected crack cocaine, a telephone pager, a car telephone, a scale, and miscellaneous ammunition.

Officers also arrested defendants Anderson and McElrath. Officers did not interview either defendant at the scene. However, officer Doran subsequently interviewed McElrath in the Hennepin County Jail on December 30. Officer Doran advised McElrath of his *Miranda* rights by reading a standard card carried by police officers. McElrath indicated he understood his rights, did not request an attorney, and provided a statement. Officer Doran also interviewed Anderson on two occasions. On each occasion, officer Doran advised Anderson of her *Miranda* rights. Each time defendant Anderson indicated that she understood her rights and was willing to speak with officer Doran. At no time during either interview did Anderson state that she wished to consult with an attor-

ney. However, during the first interview Anderson became visibly upset and the interview was terminated. Anderson provided a statement to officer Doran during each interview.

## DISCUSSION

 Defendants move to suppress all physical evidence seized pursuant to the search warrants executed August 14, 1990 and December 28, 1990 on the ground that the searches and seizures violate the Fourth Amendment to the United States Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Specifically, defendants contend that the search warrants were not issued upon probable cause. In passing upon the validity of a search warrant, the court accords deference to the state district court's probable cause determination. *United States v. Brown*, 584 F.2d 252, 256 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). The issuer of a warrant is to decide "whether, given all the circumstances of the affidavit, 'there is a fair probability that evidence of wrongdoing will be found.'" *United States v. Maejia*, 928 F.2d 810, 815 (8th Cir.1991), *citing*, *United States v. Streeter*, 907 F.2d 781, 787 (8th Cir.1990). It is not enough for the issuer of a warrant to conclude that contraband may have been situated on the premises to be searched at some time in the past. The issuer must find probable cause to think that evidence of criminal conduct is present "at the time the warrant [is] issued." *United States v. Biondich*, 652 F.2d 743, 746 (8th Cir.1981), *cert. denied*,

454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981); *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679–80, 80 L.Ed.2d 154 (1984); *United States v. Domme*, 753 F.2d 950, 953 (11th Cir.1985).

 In light of the standards set forth above, the court concludes that the affidavits underlying the warrants signed August 10 by Judge Levy and December 13 by Judge Gill are sufficient to establish probable cause. Each affidavit sets forth specific information provided by a reliable police informant demonstrating that the 1206 James Avenue duplex served as the hub of a cocaine distribution operation. The informant purchased cocaine from residents of the duplex using money provided by the police; the informant identified some of these residents by name.

 The court's inquiry relative to the December 13 warrant may not end with the determination that it was issued originally upon probable cause. As noted above, Minnesota law provides:

> [a] search warrant must be executed and returned to the court which issued it within ten days after its date. After expiration of this time, the warrant is void unless previously executed.

Minn.Stat. § 626.15. Here, police did not execute the December 13 warrant until December 28, fifteen days after its issuance. Under Minn.Stat. § 626.15, the warrant became void on December 23.[3] The government attempts to overcome this apparent deficiency by contending that officer Doran "followed the appropriate steps and received judicial approval for [a] time extension." However, the government does not cite authority describing the procedures to be followed when seeking to extend a search warrant beyond its effective date. Significantly, the government does not appear to argue that the requirements for obtaining an "extension" of a search warrant differ in any respect from the fourth amendment requirements governing the is-

---

**3.** Federal Rule of Criminal Procedure 41(c)(1) also requires that search warrants be executed within ten days of issuance. *See, United States v. Simpkins*, 914 F.2d 1054, 1058–59 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1081 (1991) (noting that Missouri statute and Fed.R.Crim.P. 41(c)(1) require execution of search warrants within ten days).

suance of a search warrant.[4] The court thus tests Judge Gill's "extension" of the December 13 warrant against the constitutional standards governing the issuance of a search warrant set forth above.

The court finds officer Doran's unsworn, telephonic statements to Judge Gill insufficient to establish a fair probability that evidence of criminal activity would be found at 1206 James at the time Judge Gill issued the extension.[5] As noted earlier, officer Doran specifically informed Judge Gill that all evidence of illegal activity had been moved out of the 1206 James duplex because residents of the duplex had spotted police surveillance. In view of officer Doran's representation, Judge Gill could not properly have found probable cause to think that evidence of criminal activity would be found at the time he authorized the search.

Courts have authorized the issuance of warrants "before the necessary events have occurred which will allow a constitutional search of the premises." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1990) (citations omitted). These are termed "anticipatory warrants" and have withstood constitutional challenge "where the contraband 'is on a sure course to its destination.'" *Id.*, *quoting, United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). Anticipatory warrants are issued nearly exclusively in contemplation of a government-controlled delivery of contraband. *See, e.g., United States v. Moore*, 742 F.Supp. 727, 735 (N.D.N.Y.1990); *United States v. Wylie*, 919 F.2d 969, 974–75 (5th Cir.1990). It is incumbent upon the government to demonstrate that a delivery of contraband to the residence will or is likely to occur. *United States v. Zygarowski*, 724 F.Supp. 1052, 1058–59 (D.Mass. 1989). Significantly, our Eighth Circuit

Court of Appeals has yet to authorize or delimit the use of anticipatory warrants.

Assuming that such warrants are not, *per se*, unconstitutional and may be utilized outside the context of a controlled delivery, the court finds that officer Doran's five-minute conversation with Judge Gill failed to establish probable cause to think that contraband would be delivered to the premises in the immediate future. Officer Doran did not describe the pending arrival of contraband other than to say that "business would resume in a couple of days, business as normal." Officer Doran did not describe in any detail the type or quantity of contraband that would arrive at the James Avenue duplex, nor did the officer describe the particular method or time of delivery. Absent such evidence, the court will not sustain the purported telephonic extension as a valid issuance of an anticipatory search warrant.

The government seeks to avoid suppression of the physical evidence seized on December 28 through application of the "good faith" exception to the exclusionary rule. This exception flows from a belief that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 919, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984). Under this exception, "evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Gibson*, 928 F.2d 250, 254 (8th Cir.1991). The Supreme Court instructs that this objective standard "requires officers to have reasonable knowledge of what the law prohibits." *Leon*, 468 U.S. at 919, n. 20, 104 S.Ct. at 3419 n. 20.

Here, the court concludes, based upon the totality of the circumstances present, that officer Doran could not have harbored an objectively reasonable belief in the valid-

---

**4.** *See, Sgro v. United States*, 287 U.S. 206, 211, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) (upon expiration or invalidation of first warrant, constitutional requirements may not be avoided by seeking a "reissue" of the first warrant).

**5.** Contrary to the express language of the fourth amendment, officer Doran was not placed un-

der oath when he spoke to Judge Gill. The primary purpose of such an oath is "to impress upon the caller the solemnity of the proceeding." *United States v. Rome*, 809 F.2d 665, 669 (10th Cir.1987). The court does not view lightly the parties' failure in this regard and admonishes against similar inattentiveness in the future.

ity of the search warrant "extension" granted by Judge Gill. First, officer Doran personally informed Judge Gill that all evidence of criminal activity had been moved out of the 1206 James duplex. In view of officer Doran's knowledge that all contraband had been moved from the duplex, it is difficult to conceive how he could reasonably believe probable cause to subsist at the time he obtained the extension. Second, numerous deviations tainted the procedure whereby officer Doran obtained the extension. As noted earlier, officer Doran was never sworn in accordance with the fourth amendment. The conversation was not tape recorded or otherwise memorialized. Finally, officer Doran's reliance upon the opinion of his superior concerning the validity of the search warrant is misplaced. The good faith exception to the exclusionary rule is intended to shield objectively reasonable police reliance upon the actions of members of the judiciary, not the representations or opinions of fellow police officers. Officer Doran's decision to question his superior concerning the warrant's effectiveness indicates, if anything, that officer Doran harbored doubt as to the warrant's validity. The court will grant defendants' motions to suppress all physical evidence seized from the duplex on December 28, 1990.

McElrath and Anderson move for the severance of counts and defendants for trial. In light of the above ruling on defendants' suppression motion, the court recognizes that this motion may be moot. The court addresses the motion in any event. Two crimes are connected together if the proof of one crime constitutes a portion of the proof of the other. Here, joinder of the charges permits the government to offer relevant evidence of firearms possession in a trial on the narcotics charge and evidence of narcotic activity as proof of motive for possession of the handgun on the firearm charge. *United States v. Sanko*, 787 F.2d 1249, 1251–52 n. 6 (8th Cir.1986); *United States v. Montes–Cardenas*, 746 F.2d 771, 776–77 (1984). Joinder also serves the interests of judicial economy. The court will deny defendants' severance motions.

Defendant McElrath moves to amend the detention order signed earlier by United States Magistrate Judge Franklin L. Noel [clerk's entry 10]. Defendant does not explain how Magistrate Judge Noel's order was incorrect. Neither does defendant provide new evidence justifying amendment of the order. The court will deny McElrath's motion.

Defendants move for the disclosure of the confidential informants relied upon by the government. However, the government represents that the informant was not a material participant in any of the crimes charged in the indictment. The court will deny defendants' motion.

Defendant Anderson moves for the suppression of all statements made to government investigators. The facts surrounding the statements provided by defendants are set forth in the "background" section of this memorandum order. The court finds nothing in the facts to support defendant's motion and will deny it.

## CONCLUSION

Based upon the files, briefs, and arguments of counsel,

IT IS ORDERED that:

1. Defendants' motions for the suppression of physical evidence seized during the August 14, 1990 search are DENIED;

2. Defendants' motions for the suppression of physical evidence seized during the December 28, 1990 search are GRANTED;

3. Defendants' motions for the severance of counts and defendants are DENIED;

4. Defendant McElrath's motion for amendment of the detention order is DENIED;

5. Defendants' motions for disclosure of the confidential informant are DENIED;

6. Defendant Anderson's motion for the suppression of statements is DENIED.