**UNITED STATES of America**

v.

**Tommy EDELIN, et al., Defendants.**

**CRIM. No. 98–264(RCL).**

United States District Court,
District of Columbia.

Nov. 15, 1999.

Jeffrey Rodd Green, Sidley & Austin, Washington, DC, Thomas Abbenante, Washington, DC, for Tommy Edelin.

Idus Jerome Daniel, Jr., Washington, DC, for Eric Jones.

Alan Philip Bayles, Washington, DC, Douglas James Wood, Roberts & Wood, Riverdale, MD, for Michael Horne.

Frederick James Sullivan, McCarthy & Sullivan, Bowie, MD, Idus Jerome Daniel, Jr., Washington, DC, for Laverne Holmes.

Billy L. Ponds, Ponds Law Firm, Washington, DC, James Thomas Maloney, Maloney & Molsen, P.L.L.C., Washington, DC, for Dennis Denard Green.

Stanley Kirkland Foshee, Alexandria, VA, Christopher Michael Davis, Mary Elizabeth Davis, Davis & Davis, Washington, DC, for Earl Edelin.

Peter Arno Krauthamer, Howard University of Law, Washington, DC, Shawn Franklin Moore, Washington, DC, for Shelton Marbury.

George Allen Dale, Washington, DC, Steven Carl Tabackman, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, Jeffrey Brian O'Toole, O'Toole, Rothwell, Nassau & Steinbach, Washington, DC, for Henry Johnson.

Jensen Egerton Barber, Law Offices of J.E. Barber, Washington, DC, Stuart A. Levey, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Marwin Mosley.

Mona Asiner, Washington, DC, Barry Coburn, Coburn & Schertler, Washington, DC, for James Faison.

Joseph Virgilio, Washington, DC, for Myron Williams.

David H. Stringer, Washington, DC, for Randy Vaughn.

Diane Stewart Lepley, Washington, DC, Mitchell Stuart Baer, Washington, DC, for Raymond Cummingham.

Howard F. Bramson, Washington, DC, David H. Stringer, Washington, DC, for Suliname Short.

Ronald Steven Douglas, Raleigh, NC, for Thaddeus Foster.

Cary Clennon, Washington, DC, Diane Marie Bianculli Savage, Research Triangle Park, NC, for Bryan Bostick.

Michael Volkov, Stephen Pfleger, Assistant United States Attorneys, Washington DC, for United States.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter came before the Court on the defendant Tommy Edelin's Motion for a Hearing. Upon consideration of the submissions of the parties and the relevant law, the defendant's Motion for a Hearing is DENIED.

### I. Background

Defendants Tommy Edelin, Eric Jones, Laverne Holmes, and Shelton Marbury were originally booked on less significant charges arising from their arrests. On January 13, 1999, pursuant to a superceding indictment that added several new defendants and charges, the government obtained orders from this Court allowing them to book and process Tommy Edelin and other co-defendants already incarcerated under the previous indictment. The following day, Edelin and the other defendants were picked up from the jail early in the morning, in accordance with the standard practice, and taken to the United States Courthouse cellblock. From there, the defendants were taken, at some time between 8:30 and 9:30 a.m., to the Seventh District Police Headquarters for booking. In the afternoon, after the defendants were booked and processed, they were then led from the Seventh District station, past the media, to a van waiting outside to transport them back to the Courthouse. The media were allowed to take pictures of the defendants as they passed.

### II. Discussion

Counsel for the defendant Tommy Edelin argues that the government's only purpose for transporting Edelin to the Seventh District station was to parade him before members of the press. The booking was unnecessary, defendant argues, since he was already being held without bond in this case. He further argues that even assuming rebooking him was necessary, it should have been done at the central cell block rather than the Seventh District station. Therefore, he contends that the real reason the government obtained booking orders for the defendant was to conduct a "perp walk," which is "a Police Department term that refers to walking an arrestee outside the precinct pursuant to a request from the media." *Lauro v. City of New York,* 39 F.Supp.2d 351, 357 (S.D.N.Y.1999).

The government, however, argues that the transportation and booking of the defendant did not constitute a "perp walk." They argue that rebooking the defendant under the new indictment was necessary to ensure that his criminal record adequately reflects the new, more serious charges. They further contend that the reason the defendant was transported to the Seventh District station for his booking was that it was the most efficient location for maintaining an orderly booking process given the manpower and facilities required to process all of the defendants. Furthermore, the government notes that they had valid booking orders from this Court, which included authorization to transport the defendants to the Seventh District station. Finally, the government contends that the facts contradict the defendant's claim that the FBI and the Metropolitan Police Department ("MPD") orchestrated the press coverage of him being transferred to the police van.

However, without making any specific findings of fact, it appears to this Court that a reasonable objective observer would find the facts of this case to support, rather than contradict, the defendant's claim. The government asserts that the defendant was transferred and booked according to their normal practice, pursuant to booking orders that it obtained on January 13, 1999. The government then goes on to

explicitly admit that the United States Attorney's Office, in cooperation with the FBI and MPD, then scheduled a press conference relating to this case to occur at MPD's Seventh District station on January 14, 1999 at 2 p.m.—the precise time and location from which defendant Edelin would be brought out after booking. Despite this admission, the government argues that it did not actually control or coordinate the press's coverage of the matter or specifically arrange for coverage of Edelin's transportation from the Seventh District station to the courthouse. In essence, the government's argument appears to be that although it led a thirsty horse to water, it did not actually force him to drink. Even without addressing the dubious nature of such a distinction, the government's behavior in this matter is clearly less than admirable.

Even more troubling is the fact that this Court, when presented with the *ex parte* booking orders at issue, was not given an adequate portrayal of the facts. The government presented the order as a purely routine order, neglecting to bring to the Court's attention the fact that the order included authorization to transport the defendant to the Seventh District station, where the government planned to call a press conference. Given these facts, the Court is extremely disappointed with the government's conduct in this case.

 Nevertheless, despite the government's conduct, the defendant fails to articulate any particular injury or possible remedy available to him. Defense counsel simply requests an evidentiary hearing on the matter and refers to *Lauro v. City of New York*, 39 F.Supp.2d 351 (S.D.N.Y. 1999), a case which held "perp walks" to be unreasonable as a matter of law and in violation of the Fourth Amendment to the United States Constitution. *Id.* at 363. *Lauro*, however, was not a criminal case, but rather a § 1983 action to recover money damages from the city and a city police officer. Since money damages are not available here, the only possible remedy

that the defendant might be seeking is a change of venue under FED.R.CRIM.P. 21(a), based on the alleged prejudicial pretrial publicity. However, such a remedy is not warranted in this case. Federal Rule 21(a) "is intended for cases in which prejudice in the community will make it difficult or impossible to select a fair and impartial jury." 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 342 (1982). A "critical factor" in determining whether pretrial publicity is likely to affect an accused's right to a fair trial is the recency of the publicity in relation to the trial. *Wansley v. Slayton*, 487 F.2d 90, 93–94 (4th Cir.1973) (citing *Beck v. Washington*, 369 U.S. 541, 556, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962) (concluding that a lapse of nine and a half months was sufficient time for the impact of any prejudicial publicity to subside);*United States v. Bowe*, 360 F.2d 1, 11 (2d Cir.1966), *cert. denied*, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966), *reh'g denied*, 386 U.S. 969, 87 S.Ct. 1040, 18 L.Ed.2d 127 (1967)(holding that since the publicity was twelve weeks old at the time the jury was empaneled, it was highly unlikely that it was retained in the jurors' memories)).

In this case, the publicity surrounding the defendant's booking was in January of 1999. The trial is currently scheduled to begin in April of 2000. Therefore, given that more than a year will have elapsed between the media reports at issue and the selection of a jury, it is highly unlikely that these reports will render it impossible to select a fair and impartial jury. "The burden is on the defendant to show a reasonable likelihood of prejudice." 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 342 (1982); *see also Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)(holding that the burden is on the defendant to show that the juror has such an opinion that will raise a presumption of partiality). The defendant has failed to do so in this case. The publicity was not so recent, wide-

**4**

spread or damaging to the defendant as to require a change of venue.

Regarding any recovery the defendant may want to seek in a civil action, this Court has expressly declined to make factual findings, and the facts would have to be litigated in any such action. However, this Court notes that any such case would prove difficult for the defendant to establish. In order to recover, the defendant would have to establish both that the "perp walk" violated his Fourth Amendment rights and that, because these rights were "clearly established" at the time, the responsible government officials are not entitled to qualified immunity.

Defendant points to *Lauro*, the only case to address this issue to date. *See Lauro* at 363. The court in *Lauro* analogized "perp walks" to the practice of bringing reporters into a home during the execution of an arrest warrant ("media ride-alongs"). *See id.* The court then, relying on *Ayeni v. Mottola*, 35 F.3d 680 (2d Cir. 1994), which held "media ride-alongs" to be unconstitutional, found "perp walks" also to be unconstitutional as a matter of law. *See Lauro* at 363. Since the decision in *Lauro*, the Supreme Court has addressed the issue of "media ride-alongs." In *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the Supreme Court held "media ride-alongs" to be a violation of the Fourth Amendment due, in large part, to an "overriding respect for the sanctity of the home." *Id.* 119 S.Ct. at 1697. However, since "perp walks" do not raise the same concerns regarding the home, the instant case can easily be distinguished from the "media ride-alongs" upon which *Lauro* relied.

Furthermore, even if a court was to find "perp walks" unconstitutional, the defendant would still have to show the law to have been clearly established at the time

of his booking in order to overcome the government officials' qualified immunity [1]. In *Wilson*, although the Supreme Court agreed with the *Ayeni* court that the practice of "media ride-alongs" was unconstitutional, it abrogated the *Ayeni* court's holding that the government was liable for its actions. *See Wilson*, 119 S.Ct. at 1701. The Supreme Court found that the government officials were entitled to qualified immunity because the law regarding "media ride-alongs" was not clearly established prior to the Supreme Court ruling. *Id.* Given that the Supreme Court found the law pertaining to "media ride-alongs" to be uncertain at the time of the defendant's booking in January of 1999, it stands to reason that the law regarding "perp walks", as an extension of that law, was also not clearly established. Therefore, the government officials would most likely be entitled to qualified immunity for their actions with regard to the defendant.

Regardless of the defendant's ability to recover damages in a civil suit, however, the defendant has clearly not established any remedy available to him in the instant case. The additional publicity generated by the defendant's transfer for booking was not so recent or damaging as to render it impossible for the defendant to receive a fair and impartial trial in this case. Given this, there is simply no need for an evidentiary hearing regarding the circumstances surrounding the defendant's booking.

### III. *Conclusion*

For the reasons set forth herein, defendant Tommy Edelin's Motion for a Hearing is DENIED.

SO ORDERED.

---

1. Since the officials involved in this case were federal officials rather than city officials as in *Lauro*, the defendant would have to bring his case under *Bivens*, rather than under § 1983. *See Bivens v. Six Unknown Named Agents of* *Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); 42 U.S.C. § 1983. However, "the qualified immunity analysis is identical under either cause of action." *Wilson*, 119 S.Ct. at 1696.