U.S. v. Syphers                          CR-03-112-JD  12/18/03  P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


United States of America

     v.                               Criminal No. 03-112-01-JD
                                      Opinion No. 2003 DNH 220
Donald Syphers


                              O R D E R


     Defendant Donald Syphers moves to suppress evidence

allegedly taken from his personal computer, including images

which the government has claimed constitute child pornography,

after the computer was seized by police executing a search

warrant.  Syphers argues that the warrant issued without probable

cause and the police took an excessively long time to examine the

computer after seizing it.  The government objects.


                             Background

     In November 2001, officers of the Concord, New Hampshire,

police department were investigating allegations that Syphers had

sexually assaulted three teenaged girls.  The assault allegedly

took place while Syphers was photographing the girls after having

altered their clothing to expose their breasts.  Based on these

allegations, the police obtained a warrant to search Syphers's

apartment in Hillsboro, New Hampshire, for evidence of the

claimed assault, including cameras, film, and computer equipment

capable of storing digitized images.[1]

In executing the warrant on November 5, 2001, the police seized a number of items allegedly found in the apartment, including the central processing unit ("CPU") and other components of a desktop computer. Also seized were more than seventy VHS cassettes, a smaller number of VHS-C cassettes and a VHS-C camcorder, and what the police later described as

> sheets of 8½ X 11" white paper containing photographs of female subjects, some who appeared to be minors. On several of the photographs, a photograph of an erect penis had been superimposed and is in contact or close proximity to the mouth of the female minor to simulate oral sex. These images were determined to be pornographic in nature and were consistent images [*sic*] being produced or duplicated from a color copier and or from a computer's color printer.

Third Dougherty Aff. ¶ 32.

The police later obtained another search warrant which authorized, <u>inter alia</u>, the viewing of the video cassettes.[2] According to the police, the VHS tapes contained "commercially produced adult pornography" spliced with segments of television programs featuring teenaged actresses. The VHS-C tapes

> were determined to contain pornographic material that appeared to have been filmed from images on a computer monitor. The monitor and backdrop appeared consistent with Syphers [*sic*] monitor and the backdrop of the room

---

[1]Syphers does not challenge the issuance of this warrant or the scope of the resulting search.

[2]Syphers also does not challenge the issuance of this warrant or the scope of the resulting search.

2

> where the computer was located. Some of the
> pornographic material appeared to originate from a web
> site identified as www.lolitas.com. These sites
> contained pornographic footage of female subjects
> engaged in oral sex and or intercourse with one or more
> male parties. Also noted on the tapes were still
> photographs of female subjects with breasts and or
> genitalia exposed. Some of the subjects of these tapes
> appear to be under the age of 18 years of age.

Third Dougherty Aff. ¶ 34.

Concord police officer Shawn P. Dougherty subsequently submitted an affidavit setting forth the foregoing descriptions of the photographs and the content of the VHS and VHS-C tapes in support of a third warrant on November 28, 2001. In the affidavit, Dougherty states that he has received specialized training in investigating child sexual abuse and has participated in dozens of child sexual abuse investigations, but does not claim to have any training or experience in investigating child pornography. The third search warrant, which authorized a search of the CPU previously seized from Syphers' apartment, was issued by the Concord District Court on November 28, 2001.[3]

That same day, the court also allowed the state's motion for an additional year to execute the warrant on the ground that inspecting the CPU would require assistance from the state police, who were then faced with "an overwhelming backlog in

---

[3]Another warrant issued on this date, authorizing the search of certain items of Syphers's personal property which he had left with an acquaintance prior to being arrested on the sexual assault charges. This warrant also is not at issue here.

similar computer crimes" and accordingly needed between nine and twelve months to complete the task. New Hampshire state police finished searching the CPU in June 2002, after spending a number of months decoding the encryption which protected the file where the claimed pornographic images were allegedly discovered.

Following the resolution of all pending state charges against him, Syphers filed a motion with the Concord District Court on April 5, 2002, seeking the return of the property seized from his apartment.[4] In its objection, the state indicated that the CPU contained recently de-encrypted images which, after they were viewed, would be shared with the United States Attorney who "would then need time to file charges if it gets to that juncture." On June 19, 2003, Syphers was indicted by a federal grand jury on one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

## Discussion

Syphers challenges the issuance of the November 28, 2001, warrant on the ground that Dougherty's description of the materials found in his apartment failed to establish probable cause that child pornography would be found on the CPU. He also

---

[4]Two of the three misdemeanor sexual assault charges filed against Syphers in Concord District Court were dismissed. The third was resolved through Syphers' entry of a guilty plea to one count of simple assault.

4

contends that the seizure of his computer for a full year following the issuance of the warrant was illegal. He therefore asks the court to suppress the images allegedly recovered from the CPU as the product of an unconstitutional search.

The government defends the sufficiency of the affidavit and argues further that the images allegedly stored on the CPU should not be suppressed, regardless of the validity of the warrant, under two different theories. First, the government contends that the images would have been found when the CPU was examined for evidence of the alleged sexual assaults pursuant to the November 5, 2001, warrant, so the inevitable discovery doctrine applies. Second, the government maintains that because the Concord police acted in good faith in obtaining the warrant, the exclusionary rule should not apply. Finally, the government contends that the police acted lawfully in detaining the CPU for several months before completing the search.

I.   Whether Probable Cause Supported The Warrant

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation . . . ." This requires the judicial officer contemplating the issuance of a warrant to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair

5

probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Keene, 341 F.3d 78, 81 (1st Cir. 2003). In considering an affidavit made in support of a search warrant, a judicial officer may draw reasonable inferences from the facts alleged. See United States v. Falon, 959 F.2d 1143, 1147 (1st Cir. 1992); United States v. Hershenow, 680 F.2d 847, 851 (1st Cir. 1982). Nevertheless, an affiant's "unsupported conclusions are not entitled to any weight in the probable cause determination." United States v. Vigeant, 176 F.3d 565, 571 (1st Cir. 1999).

In United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), the First Circuit concluded that an agent's statement that the images the defendant had allegedly posted on a website contained a minor lasciviously displaying his genitals amounted to "a bare legal assertion . . . insufficient to sustain the magistrate judge's determination of probable cause." Id. at 17. The court reasoned that classifying the display of genitalia in a particular image as "lascivious" and therefore pornographic within the meaning of 18 U.S.C. § 2256(2)(E) involves "inherent subjectivity." Id. at 18. Accordingly, the court found error in the issuance of the warrant "absent an independent review of the images, or at least some assessment based on a reasonably specific description." Id. at 19. Syphers contends that

6

Dougherty's descriptions of the materials allegedly found in the apartment lack the level of specificity which <u>Brunette</u> demands.

The court disagrees. While Dougherty's affidavit expressed his conclusions that the photographs and videotapes he claims to have seized from the apartment contained pornographic images, he also describes the images in some detail. Specifically, Dougherty related that several of the photographs featured an erect penis superimposed on or near the mouth of an apparent minor and that the VHS-C cassettes contained footage of seemingly underaged females engaged in oral sex and sexual intercourse.[5] These descriptions establish probable cause that the images show minors "engaging in sexually explicit conduct" as defined by 18 U.S.C. § 2256(2)(A) to encompass "sexual intercourse, including genital-genital [and] oral-genital" and that they therefore constitute child pornography within the meaning of 18 U.S.C.

_____

[5]The court agrees that the contents of the VHS tapes could not constitute child pornography, because the only images of minors on them were "segments of children's television featuring teenaged actresses" which had not been altered, but simply interspersed with clips of "commercially produced adult pornography." Similarly, Dougherty's description of certain images on the VHS-C tapes as "still photographs of female subjects with breasts and or genitalia exposed" does not meet the specificity requirement of <u>Brunette</u>. These determinations do not affect the outcome of Syphers' motion, however, because the other images contained in the VHS-C tapes and those in the printed photographs in and of themselves sufficiently established probable cause to issue the warrant.

7

2256(8).  See United States v. Getzel, 196 F. Supp. 2d 88, 93 (D.N.H. 2002) (finding statement that image showed minor engaged in oral sex and genital to genital contact sufficient to establish probable cause); United States v. Bunnell, 2002 WL 981547, at *4 (D. Me. May 10, 2002) (finding statement that image showed minor participating in "oral copulation" sufficient to establish probable cause).

Indeed, the fact that Dougherty describes images of minors engaged in sexually explicit activity, rather than lasciviously displaying their genitals, renders the concerns underlying Brunette less pressing here.  "While the 'lascivious exhibition of genitals' might be a matter of opinion, direct physical contact between the mouth . . . and the genitals . . . is descriptive and is a determination of fact rather than a conclusion of law."  Bunnell, 2002 WL 981457, at *4.  In issuing the warrant authorizing the search of the CPU, the Concord District Court was not left to rely on mere conclusions that the media allegedly seized from the apartment contained child pornography.  Cf. Brunette, 256 F.3d at 18-19.  Instead, Dougherty conveyed the fact that images which appeared to have been generated by a computer showed seeming minors engaged in oral-genital contact and sexual intercourse.  This sufficed to establish probable cause that the CPU contained child pornography

8

as defined by 18 U.S.C. § 2256(2)(A).

Syphers also notes that the Supreme Court has struck down as unconstitutionally overbroad that portion of 18 U.S.C. § 2256 which criminalized depictions which "appear to be" of a minor engaging in sexually explicit conduct. <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234, 258 (2002). He therefore contends that Dougherty's affidavit, which provided only that the persons depicted in the materials allegedly seized from the apartment "appear to be" minors, did not show probable cause that the CPU contained images violating the enforceable part of the statute. <u>Free Speech Coalition</u>, however, was not decided until April 16, 2002, more than four months after Dougherty submitted his affidavit describing the materials on November 28, 2001. The government therefore argues that the evidence allegedly discovered on the CPU should not be suppressed because the police were acting in good faith in searching pursuant to a warrant which was consistent with the law existing at that time.

"[B]ecause the purpose of the exclusionary rule is to deter police officers from violating the Fourth Amendment, evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" <u>Illinois v. Krull</u>, 480 U.S. 340, 348-49

9

(1987) (quoting <u>United States v. Peltier</u>, 422 U.S. 531, 542 (1975)); <u>see also</u> <u>United States v. Curzi</u>, 867 F.2d 36, 44-45 (1st Cir. 1989) (noting that good faith exception to exclusionary rule applies when officers act in good faith in relying on warrant later declared unconstitutional).  Assuming, without deciding, that an affiant's statement that an image "appears to" depict a minor engaged in sexual activity does not establish probable cause to search for child pornography in the wake of <u>Free Speech Coalition</u>,[6] the court determines that the good faith exception precludes application of the exclusionary rule to the evidence allegedly recovered from the CPU.

When Dougherty submitted his affidavit in support of the November 28, 2001, search warrant, the validity of 18 U.S.C. § 2256, insofar as it criminalized the possession of images which appeared to depict minors engaged in sexual activity, had been upheld by the First Circuit.  <u>See</u> <u>United States v. Hilton</u>, 167 F.3d 61, 65 (1st Cir. 1999); <u>accord</u> <u>United States v. Mento</u>, 231 F.3d 912, 915 (4th Cir. 2000); <u>United States v. Acheson</u>, 195 F.3d

_____

[6]In <u>Getzel</u>, this court ruled that the affiant's description of the subject of the images as a "minor" was sufficient to establish probable cause based in part on the affiant's experience in investigating child pornography cases.  196 F. Supp. 2d at 93.  Neither Syphers nor the government, however, offers any argument as to whether Dougherty's experience should lend weight to his conclusions that the subjects of the images in question appear to be minors.

645, 648 (11th Cir. 1999).  Thus, Dougherty could not have reasonably known at the time he swore out his affidavit that his descriptions of the images as appearing to depict minors might result in an unconstitutional warrant.  See Brunette, 256 F.3d at 19 (omission of specific description of images "objectively reasonable" in light of "uncertain state of the law").

Even if Dougherty's affidavit were insufficient to establish probable cause that the CPU contained child pornography in light of Free Speech Coalition, then, the officers' good faith would render the exclusionary rule inapplicable.[7]  Syphers's motion to suppress the evidence allegedly seized from the CPU is denied insofar as it rests on the ground that Dougherty's affidavit failed to show probable cause for the search.[8]

II.   Whether the Duration of the CPU's Seizure Was Excessive

---

[7]Syphers also argues that, under Free Speech Coalition, 18 U.S.C. § 2254 cannot constitutionally criminalize the photographs depicting a minor with the image of a penis superimposed on or near her mouth which were allegedly found in his apartment.  Free Speech Coalition, however, expressly did not consider the constitutionality of the statute insofar as it prohibits "alter[ing] innocent pictures of real children so that the children appear to be engaged in sexual activity."  535 U.S. at 242.  In any event, even if the photographs are no longer illegal by virtue of Free Speech Coalition, the good faith exception would still apply, for the reasons already stated.

[8]Accordingly, the court does not reach the government's inevitable discovery argument.

Syphers also requests suppression of the images allegedly found on the CPU on the ground that the police remained in possession of the computer for an excessive length of time after obtaining authorization to search it on November 28, 2001. That warrant required "an immediate search" of the CPU. On the same day, however, the state obtained an additional twelve months to complete the task through an order issued by the Concord District Court. The government represents that the examination of the CPU was completed in June 2002, which Syphers does not dispute.

Accordingly, the court is not presented with a situation in which the search failed to conform to the requirements of the warrant. Cf. United States v. Brunette, 76 F. Supp. 2d 30, 42 (D. Me. 1999) (suppressing evidence garnered from computer after expiration of warrant's deadline for completing search), aff'd, 256 F.3d 14 (1st Cir. 2001). Nor does Syphers argue that the circumstances supporting the issuance of the warrant had changed by the time of its execution, rendering the warrant stale. Cf. United States v. Bedford, 519 F.2d 650, 655-56 (3d Cir. 1975).

Instead, Syphers contends that the state court was not at liberty to extend the time for execution of the warrant beyond the ten days allowed by Fed. R. Crim. P. 41(e)(2)(A). As he concedes, however, "[t]he mere fact that evidence obtained by state officers, under a state warrant, based upon violations of

state law, is used in a federal prosecution does not invoke the requirements of Rule 41."[9]  United States v. Crawford, 657 F.2d 1041, 1046 (9th Cir. 1981).  To the contrary, in order for Rule 41 to apply, the search in question must be "federal in character."  Id.; see also United States v. Lehder-Rivas, 955 F.2d 1510, 1522 (11th Cir. 1992).

"Generally, a warrant is not federal in character if no federal agents participated in obtaining the warrant or in conducting the search."  United States v. Gobey, 12 F.3d 964, 967 (10th Cir. 1993); see also United States v. Levesque, 625 F. Supp. 428, 454 (D.N.H. 1985), aff'd, 879 F.2d 853 (1st Cir. 1989).  Syphers does not allege any federal involvement in either the procurement of the November 28, 2001, warrant or the subsequent inspection of his CPU, which were handled by the New Hampshire state police.  Nevertheless, he argues that Rule 41 applies because "the intent of the authorities . . . at the time that the extension was sought . . . was to prosecute the

_____

[9]While Syphers also argues that the November 28, 2001, warrant "was premised on the need to search for child pornography on the defendant's computer[,] . . . a federal crime," the possession of child pornography is also criminal under New Hampshire law.  See N.H. Rev. Stat. Ann. § 649-A:3, (I)(e).  In any event, even when state police do execute a state search warrant to search for evidence of a federal crime, federal statutory requirements do not necessarily apply.  See United States v. Daoust, 728 F. Supp. 41, 47 (D. Me. 1989), aff'd without opinion, 916 F.2d 757 (1st Cir. 1990).

13

defendant in [f]ederal [c]ourt," presumably as demonstrated by the state's hint at a possible federal prosecution in its objection to Syphers' motion to return the seized property.

As an initial matter, the materials submitted to this court do not support Syphers' characterization of the state's intent. Because the state was still investigating allegations that Syphers had sexually assaulted three minors and photographed them with their breasts exposed at the time it sought the extension of the warrant, there is no reason to believe that it intended to search the CPU solely or primarily for purposes of aiding in his possible federal prosecution on child pornography charges. Accordingly, there is no proof that "state officers intentionally violated a federal statute that governed their conduct" which could justify suppressing the evidence allegedly found on the CPU. United States v. Moore, 956 F.2d 843, 847 (8th Cir. 1992).

In any event, Syphers's argument erroneously focuses on the conduct of state, rather than federal, law enforcement officials. "[C]ompliance with Rule 41 is required so as to insure that federal officers do not take advantage of more lenient state standards." Crawford, 657 F.2d at 1047. Given the absence of evidence that federal authorities participated in or even knew of the procurement or extension of the November 28, 2001, warrant, there is no reason to believe that they sought to evade the

14

requirements of federal law by having state officials carry out the search. Rule 41 therefore provides no basis for suppressing the images discovered by the state police pursuant to the warrant issued by the Concord District Court.[10] See <u>United States v. Schroeder</u>, 129 F.3d 439, 443 (8th Cir. 1997).

Syphers also attacks the state court's decision to extend the time to execute the warrant on the basis of a written motion unsupported by an affidavit or other sworn testimony. It is true that the Fourth Amendment requires that probable cause supporting the issuance of a warrant appear by oath or affirmation. 2 Wayne R. LaFave, <u>Search and Seizure</u> § 4.3(e) (3d ed. 1996). Syphers does not provide any authority, however, for the proposition that the constitution mandates sworn testimony as a basis for extending the time to execute a warrant which has already issued.

Syphers relies on <u>United States v. McElrath</u>, 759 F. Supp. 1391 (D. Minn. 1991), which does not support his position. There, the police obtained a valid search warrant for premises suspected to contain evidence of ongoing narcotics activity. <u>Id.</u>

---

[10]Even if Fed. R. Crim. P. 41(e)(2)(A) applied, it would not support the suppression of evidence unless Syphers could show prejudice arising from its violation or that the state police intentionally disregarded it. <u>Crawford</u>, 657 F.2d at 1046. For the reasons stated <u>infra</u>, Syphers can show neither.

15

at 1392-93. Before they could carry out the search, however, the police learned that the narcotics had been moved when the suspects became aware of the investigation, but would be returned to the premises shortly. Id. at 1393. After a police officer communicated this information by telephone to the judge who had issued the warrant, he extended the deadline to execute the warrant without swearing the officer in or receiving a supporting affidavit. Id. The court suppressed the fruits of the subsequent search, but not because the judge had extended the warrant based on unsworn testimony. Id. at 1395. Although the court did criticize the failure to place the police officer under oath, the evidence was suppressed as the result of an improper anticipatory warrant because the officer's testimony failed to establish probable cause that the narcotics would be returned to the premises in advance of the extended deadline. Id.

Here, just as probable cause existed to support a search of the CPU when the warrant issued on November 28, 2001, probable cause also existed to support the search at any time during the next year, because the CPU was under the exclusive control of the police during that period. McElrath is thus inapposite.

Even if Syphers were correct that sworn testimony is necessary to support the extension of an existing warrant, however, the violation of that rule here would not warrant the

16

suppression of the evidence allegedly found on the CPU.  There is no indication that the police acted in bad faith in failing to complete the examination of the CPU until June, 2002.  To the contrary, on the very same day the warrant issued, the state moved for an extension based on an "overwhelming backlog" in the investigation of computer crime by the state police.  The length of the extension requested was reasonable in light of the anticipated length of the delay.  In addition, because certain images allegedly stored on the CPU had been encrypted, and some 64,000 images were eventually found, conducting a thorough inspection of the CPU proved a time-consuming process.  Yet, notwithstanding these difficulties, the state police still completed the search five months ahead of the deadline.

Courts have applied the good faith exception to excuse a deficiency in the submission of evidence to the judicial officer who issued the warrant.  See Lehder-Rivas, 955 F.2d at 1522-23 (magistrate failed to make record of officers' affirmations in violation of Fed. R. Crim. P. 41(d)(2)©)); United States v. Lace, 502 F. Supp. 1021, 1045-46 (D. Vt. 1980) (same), aff'd, 669 F.2d 46 (2d Cir. 1982); 27 James Wm. Moore et al., Moore's Federal Practice § 641.21[3][a], at 641-64 n.16 (collecting cases).  The court concludes that New Hampshire authorities acted in good faith in obtaining and executing the November 28, 2001, warrant.

17

Suppression of the evidence allegedly found on the CPU is therefore inappropriate, regardless of whether it was improper to extend the deadline for the warrant without sworn testimony.[11]

Finally, Syphers asserts that the state acted unreasonably in detaining the CPU for seven months before completing the search. The government counters that the Fourth Amendment does not impose any limitation on the length of a forensic examination of a computer. "However, from the general prohibition against 'unreasonable searches and seizures' . . . it may be contended that there are some constitutional limitations upon the time when a search warrant may be executed." 2 LaFave § 4.7.

Based on the same reasons which support the finding that the state acted in good faith with respect to the warrant, the court concludes that the state did not overstep any constitutional boundaries in seizing the CPU for seven months under the circumstances presented. See United States v. Greene, 56 M.J. 817, 822-23 & n.4 (N-M. Ct. Crim. App.) (finding retention of computer and disks for three months during inspection for child

---

[11]The court also notes that the reason supporting the extension of the warrant did not arise out of new information as to suspected criminal activity, cf. McElrath, but merely the administrative fact of a backlog at the state police computer crime unit. Any error by the Concord District Court in failing to receive this fact by sworn testimony, then, would not be serious enough to warrant application of the exclusionary rule.

pornography reasonable when defendant consented to seizure, but recognizing that "an excessively long period of retention, following a lawful seizure, could be unreasonable"), rev. denied, 57 M.J. 463 (C.A.A.F. 2002). Syphers' motion is therefore denied to the extent it seeks suppression of evidence allegedly found on the CPU on the ground that the state took possession of the computer for an excessively long period.

## Conclusion

For the foregoing reasons, Syphers' motion to suppress (document no. 19) is DENIED.

SO ORDERED.

_____<br>
Joseph A. DiClerico, Jr.<br>
United States District Judge

December 18, 2003

cc:  Jonathan R. Saxe, Esquire<br>
     Helen W. Fitzgibbon, Esquire<br>
     U.S. Probation<br>
     U.S. Marshal