**UNITED STATES of America,**
**Appellee,**

v.

**Donald SYPHERS, Defendant,**
**Appellant.**

No. 04–2438.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 2005.

Decided Oct. 20, 2005.

---

Jonathan R. Saxe, Assistant Federal Public Defender, for appellant.

Peter E. Papps, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

Before BOUDIN, Chief Judge, SILER,* Senior Circuit Judge, and SARIS,** District Judge.

SARIS, District Judge.

## I. INTRODUCTION

Defendant-appellant Donald Syphers appeals the denial by the United States District Court for the District of New Hampshire of a motion to suppress evidence of child pornography recovered from his computer. Appellant argues that the affidavit in support of the state court warrant failed to establish probable cause to search the computer because it did not include copies or descriptions of the alleged pornographic images that would provide the basis for

* Of the Sixth Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

evaluating whether the subjects were likely real children, and fails the standard for the good faith exception to the Fourth Amendment exclusionary rule. Appellant also contends that the police held the computer for an unreasonable amount of time in order to conduct the search, in violation of Fed.R.Crim.P. 41(e)(2)(A). We affirm the district court's ruling.

## II. BACKGROUND

In August 2001, the Concord, New Hampshire Police Department began investigating appellant's alleged sexual assault of two girls who were ages fourteen and fifteen at the time. The police interviewed the girls. Appellant had allegedly photographed them with their breasts exposed and fondled their breasts.

Based on this information, Detective Sean P. Dougherty, an investigator in the area of child abuse and sexual assault (but not child pornography), obtained a state court search warrant, which is not challenged, for appellant's residence in Hillsboro, New Hampshire. During the search on November 5, 2001, police seized a Gateway computer, as well as cameras, camera bags, undeveloped film, photographs, a camcorder, and more than seventy videotapes.

The search also yielded, according to Detective Dougherty, sheets of paper containing "photographs of female minors that appeared to be younger than 16 years old. In [ ]several of the photographs, an erect penis had been superimposed and in contact or close proximity to the mouth of the female minor to simulate oral sex." Detective Dougherty applied for a second warrant, based on this description, to search the items seized in the first search because he believed that they would yield evidence of child pornography and sexual assault.

On November 8, 2001, a state court issued a second warrant (also not challenged) to search a footlocker, develop film, and view the videotapes seized at appellant's residence. Some of the videotapes contained commercially produced adult pornography spliced with segments of teenage television actresses. The videotapes also contained pornographic material "that appeared to have been filmed from a computer monitor." Detective Dougherty stated that the "monitor and backdrop appeared consistent with [appellant's] monitor and the backdrop of the room where the computer was located."

Detective Dougherty then sought a third warrant to search appellant's computer—the warrant at issue in this appeal. The affidavit in support of this warrant described the materials seized from appellant's apartment under the first two warrants, including the "photographs of female subjects, some who appeared to be minors." The affidavit also described the videotape of what appeared to be appellant's computer monitor:

> Some of the pornographic materials appeared to originate from a web site identified as *www.lolitas.com.* These sites contained pornographic footage of female subjects engaged in oral sex and or intercourse with one or more male parties. Also noted on the tapes were still photographs of female subjects with breasts and or genitalia exposed. Some of the subjects of these tapes appear to be under the age of 18 years of age.

A state court issued the third warrant on November 28, 2001. The same day, the prosecutor moved for an additional twelve months to search the computer due to an "overwhelming backlog in similar computer crimes." The court granted the motion. In January 2002, Syphers pled guilty in state court to a reduced charge of simple assault.

Following the resolution of all pending state sexual assault charges, appellant

filed a motion for return of his computer on April 5, 2002. The state objected on grounds that it needed more time to complete reviewing 64,000 newly de-encrypted images on the computer and to share the material with the United States Attorney's office. The state court denied the motion. The police completed the search of the computer in June 2002, within the twelve-month warrant extension window. The search of the computer yielded at least ten (but not more than 100) images of child pornography. The FBI reviewed the material, identified several of the subjects as real children, and identified the sources of some of the images.

On June 19, 2003, a federal grand jury returned an indictment of appellant on one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On December 18, 2003, the United States District Court for the District of New Hampshire denied appellant's motion to suppress the material recovered from his computer. *United States v. Syphers*, 296 F.Supp.2d 50, 55–56 (D.N.H.2003) (DiClerico, J.) (denying motion to suppress under the good faith exception and holding that the duration of the computer seizure was not excessive).

On May 20, 2004, the district court declared a mistrial in appellant's case. The parties then negotiated a plea agreement in which appellant reserved the right to appeal the ruling on his motion to suppress, pursuant to Fed.R.Crim.P. 11(a)(2). The sentencing guideline calculation was based on appellant's possession of child pornography, the evidence of which was obtained from his computer. On October 14, 2004, appellant was sentenced to thirty months imprisonment. Appellant here challenges only the denial of his motion to suppress.

## III. STANDARD OF REVIEW

■ "In reviewing a district court's denial of a suppression motion, this Court reviews the district court's findings of fact for clear error ... [and] reviews questions of law *de novo*." *United States v. Dunning*, 312 F.3d 528, 531 (1st Cir.2002). "[D]eterminations of ... probable cause should be reviewed *de novo* on appeal." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* Review of good faith determinations is also *de novo*. *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir.2001).

## IV. DISCUSSION

### A. *Probable Cause*

■ The Fourth Amendment requires probable cause for a search warrant to issue. U.S. Const. amend. IV. Probable cause for a warrant based on an affidavit "exists where information in the affidavit reveals 'a fair probability that contraband or evidence of a crime will be found in a particular place.' 'Probability is the touchstone' of this inquiry." *United States v. Baldyga*, 233 F.3d 674, 683 (1st Cir.2000) (quoting *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir.1997)). Thus, "[t]he standard of probable cause requires a probability, not a prima facie showing, of criminal activity." *United States v. Burke*, 999 F.2d 596, 599 (1st Cir.1993); *see also United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir.2004) ("The probable cause standard does not require officials to possess an airtight case before taking action." (internal quotations and citation omitted)).

■ "The standard applied in determining the sufficiency of an affidavit is a 'totality of the circumstances' test." *United States v. Garcia*, 983 F.2d 1160, 1167 (1st Cir.1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "[S]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." *Baldyga*, 233 F.3d at 683 (quoting *United States v. Bonner*, 808 F.2d 864, 868 (1st Cir.1986)); *see also Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotations and citation omitted)).

■ However, "probable cause to issue a warrant must be assessed by a judicial officer, not an investigating agent." *Brunette*, 256 F.3d at 18. "This judicial determination is particularly important in child pornography cases, where the existence of criminal conduct often depends solely on the nature of the pictures." *Id.*

A court reviewing a warrant application to search for pornographic materials ordinarily is unable to perform the evaluation required by the Fourth Amendment if the application is based on allegedly pornographic images neither appended to, nor described in, the supporting affidavit. Ideally, copies of such images will be included in all search warrant applications seeking evidence of child pornography crimes. If copies cannot feasibly be obtained, a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice to allow a

magistrate judge to make a considered judgment.

*Id.* at 20.

Appellant argues that the third warrant lacked probable cause in light of this Court's holding in *Brunette* and the Supreme Court holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).[1] In *Free Speech Coalition*, involving a statutory ban on a range of sexually explicit images which were produced without using real children, the Supreme Court held that the prohibition on child pornography that only "appears to be[ ] of a minor" engaging in sexually explicit conduct was overbroad and violated the First Amendment. *Id.* at 256, 122 S.Ct. 1389. The Court's holding extends to computer-generated images ("virtual child pornography") as well as images of real adults who look as though they are minors ("youthful adult pornography"). *See id.* at 241, 122 S.Ct. 1389; *see also id.* at 261, 122 S.Ct. 1389 (O'Connor, J., concurring in part and dissenting in part). Therefore, after *Free Speech Coalition*, the government must prove as elements of the crime both that the image depicts an actual child, not a virtual child, and that the person depicted is a child, not an adult, to sustain a child pornography conviction. *See United States v. Hilton*, 386 F.3d 13, 18 (1st Cir.2004).

■ This case concerns the sufficiency of the affidavit to support probable cause, not the sufficiency of evidence for a conviction. *Cf. id.* "[P]robable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Garcia*, 197 F.3d 1223, 1227 (8th Cir.1999) (internal quotations and citation omitted). Appel-

---

1. Appellant also argues in passing that the warrant violates the First Amendment but does not develop this argument as a separate basis for relief. The assessment of probable cause is no different where First Amendment concerns may be at issue. *Brunette*, 256 F.3d at 16–17.

lant cites, and the Court finds, no precedent that would require a more substantial showing for a search warrant in a child pornography case post-*Free Speech Coalition*. Thus, an affiant must establish probable cause, based on the totality of the circumstances, that evidence of child pornography depicting minors will be discovered at a particular location to secure a warrant to search at that location. *See Baldyga*, 233 F.3d at 683.

In its brief, the government argues that the application for the third warrant established probable cause that evidence of criminal activity would be found in appellant's computer. *See Syphers*, 296 F.Supp.2d at 55. In the particular circumstances of this case, there may have been probable cause. As the affidavit described, the case began with appellant's alleged photographing and fondling of minor girls, ages fourteen and fifteen, both of whom the police interviewed. The investigation proceeded through two successive search warrants, each of which resulted in evidence of potential criminal activity. *Cf. Brunette*, 256 F.3d at 19 (distinguishing *United States v. Smith*, 795 F.2d 841 (9th Cir.1986), on grounds that in *Smith* the affiant provided "other indicia of probable cause"). Some of the pornographic materials appeared to originate from a website identified as www.lolitas.com, "Lolita" being a well-known moniker for minor girls.[2] *See United States v. Gourde*, 382 F.3d 1003, 1005 (9th Cir.2004) (describing material from other "lolita" website), *reh'g granted*, 416 F.3d 961 (9th Cir.2005); *United States v. Grimes*, 244 F.3d 375, 379 n. 7 (5th Cir.2001) (" 'Lolita' is often a code word for child pornography."). Moreover, Detective Dougherty provided in his affidavit detailed descriptions of the sexual activity depicted in the images seized during prior searches. *Cf. Brunette*, 256 F.3d at 17 ("[T]he affidavit ... did not specify with any detail the basis for believing that [the] images were pornographic.").

What makes this a tough call is that the application did not include the images seized previously or provide any detailed description of the physiological features of the persons depicted in those images (i.e., by describing body proportion, growth and development). *See generally, United States v. Hilton*, 386 F.3d at 15 ("The Tanner Scale was developed through analysis of many children both in the United States and throughout the world and provides a basis for estimating a person's stage of physiological development."); *United States v. Hall*, 312 F.3d 1250, 1263 (11th Cir.2002) (discussing testimony that the girl in an image was "definitely under 12" based on "the small size of the child overall, the small size of her hands, her total lack of pubic hair and breast tissue development, and the relative size of the child vis-à-vis the adult male in the picture"), *cert. denied*, 538 U.S. 954, 123 S.Ct. 1646, 155 L.Ed.2d 502 (2003); *United States v. Katz*, 178 F.3d 368, 373–74 (5th Cir.1999) (describing the "Tanner Scale" for determining the age of postpubescent Caucasian females based on breast development and pubic hair development).[3] At oral argument, the government refrained from arguing in support of probable cause in light of this omission. Although the government did not concede an absence of probable cause based on *Free Speech Coalition* and *Brunette*, its defense of the warrant application was tepid, at best, and it acknowledged that including in a warrant application the images of alleged child

---

**2.** The name comes from the well-known novel by Vladimir Nabokov, *Lolita*, published fifty years ago about a man who became obsessed with seducing a young girl.

**3.** Most of the caselaw regarding such descriptions concerns the sufficiency of evidence at trial, not the finding of probable cause for a search warrant.

pornography seized previously is "the safest way to go."

In these circumstances, the Court need not decide under the totality of the circumstances whether probable cause supported the third warrant, despite the omission of the images and a specific description of the subjects to demonstrate that they were actual children, because the issuance of the third warrant satisfies the good faith exception to the exclusionary rule. *See United States v. Robinson*, 359 F.3d 66, 69 (1st Cir.2004). The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children. An officer who fails to follow this approach without good reason faces a substantial risk that the application for a warrant will not establish probable cause. *See Brunette*, 256 F.3d at 20.

### B. *Good Faith*

We review *de novo* determinations that the application for a search warrant satisfies the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "The usual remedy for seizures made without probable cause is to exclude the evidence wrongfully seized in order to deter future violations of the Fourth Amendment." *Brunette*, 256 F.3d at 19; *see also United States v. Capozzi*, 347 F.3d 327, 332 (1st Cir.2003) (stating that exclusion of evidence is appropriate "where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"). "This exclusionary rule does not obtain, however, where an objectively reasonable law enforcement officer relied in good faith on a defective

warrant because suppression in that instance would serve no deterrent purpose." *Brunette*, 256 F.3d at 19 (citing *Leon*, 468 U.S. at 920–21, 104 S.Ct. 3405 (1984)); *see also Robinson*, 359 F.3d at 69. As this Court stated in applying the good faith exception in *Brunette*: "[A]lthough we hold that the omission of images or a description of them was a serious defect in the warrant application, the uncertain state of the law at the time made reliance on the warrant objectively reasonable." 256 F.3d at 19.

The state court issued the third warrant just four months after the decision in *Brunette*. While *Brunette* emphasizes the importance of providing images or a sufficient description of them with an application for a child-pornography-related warrant, *Brunette* was not specifically directed to whether the subject of the images was a minor, but instead to whether the images depicted a lascivious exhibition of a child's genitals. *Id*. The Court held in *Brunette* that the Customs Service Agent-affiant's "bare legal assertion [that photos depicted a 'prepubescent boy lasciviously displaying his genitals'], absent any descriptive support and without an independent review of the images, was insufficient to sustain the magistrate judge's determination of probable cause." *Id*. at 17.

In contrast, Detective Dougherty provided significant detail in describing the sexual activity depicted in the images. Although he did not provide information that would allow a judge to assess independently whether the subjects were actual minors, the Supreme Court did not decide *Free Speech Coalition* until April 2002, five months after the issuing of the third warrant. Meanwhile, the validity of the statute that criminalized the possession of images which "appeared" to depict minors engaged in sexual activity had been upheld

by this Court. *See United States v. Hilton,* 167 F.3d 61, 65 (1st Cir.1999). Under then-prevailing caselaw, the police who executed the third warrant had an objectively reasonable belief, based on the course of the investigation and the descriptions included in the application for the third warrant, that probable cause supported the third warrant. *See Robinson,* 359 F.3d at 70 (applying the good faith exception to a search warrant in a child pornography case because the officer "believed that the evidence in the aggregate gave probable cause to believe that [the defendant] was storing illegal images in his computer, and his warrant affidavit was far from 'bare bones' "). Therefore, the government has met its heavy burden of showing that the good faith exception to the exclusionary rule applies. *See Leon,* 468 U.S. at 920–21, 104 S.Ct. 3405.

## C. *Warrant Extension*

Appellant argues that the police held the computer for an unreasonable amount of time and violated Fed.R.Crim.P. 41(e)(2)(A),[4] which states that a warrant must command an officer to "execute the warrant within a specified time no longer than 10 days."

The government argues that the ten-day stricture in Rule 41 is not applicable because there is no evidence that the search was federal in nature. Appellant responds that the state law enforcement officials intended to turn the evidence over for federal prosecution at the time they searched the computer, thus triggering the ten-day time limit of Rule 41. If the warrant is a proper state warrant, then each requirement of Rule 41 is not necessary "even though federal officials participated in its procuration or execution." *United*

States v. Krawiec, 627 F.2d 577, 581 (1st Cir.1980) (citation omitted).

In this case, the computer search that yielded evidence later used in a federal prosecution was conducted by state law enforcement pursuant to a state court search warrant. There is no evidence that federal agents participated in the state investigation, procurement of the warrant, or request for extension. Therefore, the investigation was not federal in character, and the ten-day stricture of Rule 41 does not apply.

"[T]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." *United States v. Clyburn,* 24 F.3d 613, 616 (4th Cir.1994); *see also United States v. Jones,* 185 F.3d 459, 463 (5th Cir.1999) ("The question that a federal court must ask when state officials secure evidence to be used against a defendant accused of a federal offense is whether the actions of the state officials violated the Fourth Amendment of the United States Constitution." (internal quotations and citation omitted)). "The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *United States v. Mitro,* 880 F.2d 1480, 1485 (1st Cir.1989) (quoting *United States v. Sellers,* 483 F.2d 37, 43 (5th Cir.1973)); *see also United States v. Crawford,* 657 F.2d 1041, 1046 (9th Cir.1981) (holding that if the search is "federal in character,"

---

4. This provision was formerly found in Rule 41(c)(1). The language of Rule 41 was amended as part of a general restyling through amendments effective December 1, 2002. *See* Advisory Committee Notes. No one has argued that the "restyling" has any substantive effect in this case.

then the legality of the search should be analyzed in light of federal constitutional requirements and those provisions of Rule 41 "designed to protect the integrity of the federal courts or to govern the conduct of federal officers." (citation omitted)).

The Fourth Amendment itself "contains no requirements about *when* the search or seizure is to occur or the *duration.*" *United States v. Gerber,* 994 F.2d 1556, 1559–60 (11th Cir.1993). However, "unreasonable delay in the execution of a warrant that results in the lapse of probable cause will invalidate a warrant." *United States v. Marin–Buitrago,* 734 F.2d 889, 894 (2d Cir.1984). The restrictions in Rule 41 "not only ensure that probable cause continues to exist, but also that it is the neutral magistrate, not the executing officers, who determines whether probable cause continues to exist." *Id.* The policy behind the ten-day time limitation in Rule 41 is to prevent the execution of a stale warrant. "A delay in executing a search warrant may render stale the probable cause finding." *United States v. Gibson,* 123 F.3d 1121, 1124 (8th Cir.1997).

A delay in execution of the warrant under Rule 41 does not render inadmissible evidence seized, absent a showing of prejudice to the defendants resulting from the delay. *See United States v. Cafero,* 473 F.2d 489, 499 (3d Cir.1973). Courts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search. *See, e.g., United States v. Gorrell,* 360 F.Supp.2d 48, 55 n. 5 (D.D.C.2004) (ten-month delay in processing of computer and camera seized, although "lengthy," "did not take the data outside the scope of the warrant such that it needs to be suppressed"); *United States v. Triumph Capital Group, Inc.,* 211 F.R.D. 31, 66 (D.Conn.2002) ("[C]omputer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution.").

The primary question is whether, under the policies embedded in Rule 41, the one-year extension order issued by the court because of a backlog in computer crimes investigations provided an excessive amount of time to allow for the search of a computer already in police custody pursuant to a warrant. Under the circumstances, the five-month delay did not invalidate the search of appellant's computer because there is no showing that the delay caused a lapse in probable cause, that it created prejudice to the defendant, or that federal or state officers acted in bad faith to circumvent federal requirements.

Finally, Defendant argues that the search warrant violated the Fourth Amendment because the request for an extension was not supported by an affidavit, but instead consisted of a one-page motion. In some cases, where a request for extension implicates the continued existence of probable cause to search, an affidavit is necessary under the Fourth Amendment. *See, e.g., United States v. McElrath,* 759 F.Supp. 1391, 1395–96 (D.Minn.1991) (allowing a motion to suppress because an officer sought and obtained an extension of a warrant via an unsworn telephonic communication which undermined the earlier finding of probable cause). Here, however, the computer was already in the government's possession, and the request for an extension to review a large number of encrypted images because of a backlog was wholly unrelated to the probable cause determination.

## V. CONCLUSION

Because the good faith exception applies and the delay in the execution of the state search did not prejudice defendant or vio-

late the Fourth Amendment, the conviction is **AFFIRMED.**