BAKER, Chief Judge
(concurring in part and dissenting in part):
I agree with the majority’s conclusion that the search in this case was unreasonable under the Fourth Amendment;[1] however, because I would not apply the exclusionary rule, I respectfully dissent.
In my view, the Government’s prolonged retention of Appellant’s hard drive without a warrant extension rendered the Government action an unreasonable, and therefore, an unlawful, seizure under the Fourth Amendment. The taint of the hard drive’s unlawful *47 seizure renders the subsequent forensic search of the hard drive unreasonable under the Fourth Amendment, when conducted absent the warrant extension or a military-search authorization.
The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Absent an exception to the warrant requirement, including those contained and recognized in the Military Rules of Evidence (M.R.E.), the constitutional process for determining probable cause is the issuance of a warrant by a judge, a civilian or military magistrate, or a neutral and detached military authority. Thus, while the Fourth Amendment does not substantively specify temporal limitations on a search or seizure, as it does the place, person, or thing to be searched, it does expressly provide a process for constitutional oversight of the Fourth Amendment. As a result, warrantless searches and seizures are presumptively unreasonable. See, e.g., Dow Chemical Co. v. United States, 476 U.S. 227, 234-35, 239, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986) (warrant-less searches presumptively unreasonable); United States v. Daniels, 60 M.J. 69, 71-72 (C.A.A.F.2004) (citing Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). Likewise, searches or seizures conducted in contravention of a warrant are also presumptively unreasonable where the provision violated is material to the determination that a search or seizure is reasonable under the Fourth Amendment.
Probable cause is the most important determinant as to whether a search is authorized and thus reasonable under the Fourth Amendment. Here, the forensic search following the prolonged retention of the hard drive did not lack probable cause.
But the Fourth Amendment also protects possessory interests. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The nature of the posses-sory interest is important when making a determination as to the reasonableness or unreasonableness of a seizure of an individual’s property. The less interest a person has in possessing or repossessing property, the more reasonable the government’s actions may be in holding the item beyond a warrant’s time limit. Likewise, a request for return may weigh in the analysis as to whether the government has acted in a reasonable or unreasonable manner by retaining an item. Here, the device in question was damaged and not functioning, and Appellant did not request its return.
The timing of a search may also be relevant to whether an unlawful search or seizure has occurred. A failure to strictly observe a time limit imposed on a warrant does not, in and of itself, render a search or seizure conducted pursuant to that warrant unreasonable for Fourth Amendment purposes. Whether or not a search conducted after the lapse of a warrant’s time limit violates the Fourth Amendment turns on whether this failure to comply with the warrant’s terms frustrates the warrant’s ability to protect Fourth Amendment interests, namely the preservation of probable cause and the protection of possessory interests in property.
Among other things, violating a warrant’s time limit may cause probable cause to become stale. For example, tips provided by informants may have a limited shelf life. If they are not acted on within a short time, they may lead law enforcement to search an area they no longer have probable cause to search.
In contrast, probable cause in cases involving the forensic analysis of a computer is unlikely to become stale during the period between the initial seizure of a computer from a suspect’s home and the later search of the computer by forensic analysis. The evidence on the computer, once the initial seizure is made, is unlikely to change. Time limits are often imposed on the forensic anal *48 ysis of computers instead to prevent the government from retaining a suspect’s property for an excessive period of time. Time limits, in this context, serve to protect an individual from a seizure that would unreasonably deprive him of his possessory interests protected by the Fourth Amendment.
The government’s authority to seize, but not search, papers or things, is not perpetual even if it is founded upon probable cause. The government cannot simply seize property, like a personal computer, ignore the provisions of a warrant, and hold it indefinitely to search at its convenience, or not at all. While a violation of a time limit may be de minimis or rule-based alone, in my view, the Government’s retention of Appellant’s hard drive for over three hundred days past the time limit is excessive in this case in the absence of the warrant extension, rendering it an unreasonable seizure under the Fourth Amendment. Consequently, the subsequent search of the hard drive stemming from the Government’s unreasonable retention of the hard drive is also unreasonable.
In this context, as the majority notes, the federal magistrate judge placed a temporal restriction of ninety days upon the Government’s authority to search anything seized at Appellant’s address. The magistrate judge also provided a mechanism to extend this timeline if needed, and had regularly done so in other cases. Part of the problem in this case arose from the later transfer of law enforcement jurisdiction over Appellant’s investigation from civilian to military authorities. It was not until 464 days after the hard drive was seized, or 376 days after the warrant’s time limit lapsed, that it was searched. While understandable given the change in law enforcement jurisdictions, the military judge found that the Government knew or should have known of the temporal restriction on searching the device in question as well as the mechanism available to extend that authority. This is not a case where an alternative and appropriate mechanism for authorizing a search was engaged, such as seeking independent search authority from a military magistrate pursuant to M.R.E. 315 after military law enforcement received the hard drive, or seeking a warrant extension from the same authority that issued the warrant as in United States v. Syphers, 426 F.3d 461, 463 (1st Cir.2005). The Government acted in contravention of the warrant without resort to available processes for extension or approval. That is unreasonable. And, given the length of the delay involved, it was constitutionally unreasonable.
However, I would not apply the exclusionary rule in this case and therefore ultimately and respectfully dissent from the result reached by the majority. While early Supreme Court precedent viewed Fourth Amendment violations as “ ‘synonymous with application of the exclusionary rule .... [subsequent case law has rejected this reflexive application.’ ” Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (quoting Arizona v. Evans, 514 U.S. 1, 13, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)). Today, “[wjhether the exclusionary sanction is appropriately imposed in a particular case ... is ‘an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.’” United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citation omitted). Given the societal interests and costs involved in invoking the exclusionary rule, suppression is a remedy of “last resort,” rather than a rule of automatic application. Hudson, 547 U.S. at 591, 126 S.Ct. 2159. In my view, current precedent indicates a more contextual approach to the application of the rule.[2] Such an approach looks beyond the *49 good faith of the police officers in question— although that is a central factor — and also takes into account the deterrent effect of applying the rule, the nature of the delict, and the societal costs of application. It follows that with such factors, rather than a per se approach to the exclusionary rule, reasonable persons (including judges) might reach differing conclusions on its application. That is the case here.
In this case, I do not believe suppression would serve the purpose of the exclusionary rule. The Supreme Court stated in Herring that deciding whether to apply the exclusionary rule “turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct.” 555 U.S. at 137, 129 S.Ct. 695. The Court went on to hold that the exclusionary rule is triggered when police conduct is “sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Id. at 144, 129 S.Ct. 695. This includes “deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.” Id. Where a Fourth Amendment violation is a product of isolated police negligence rather than overreaching, there is no wrongful police conduct, nor pattern of repeated negligence, to deter.
Here, there is no evidence in the record that the delayed search of the hard drive resulted from law enforcement’s bad faith or intentional disregard of the terms of the warrant. Indeed, Appellant, the moving party, had the opportunity to question SA Har-stad on his actions and motives and did not unearth facts indicating bad faith or intentional misconduct. As a result, the facts suggest isolated negligence, as was the case in Herring. This investigation originated as a state or federal civilian investigation before being handed over to the military justice system, where different rules, namely, the lack of time limits on searches, usually govern. The record suggests that failing to adhere to the ninety-day time limit was a mistake — not a deliberate act borne of an intentional, willful disregard of the warrant’s terms or the result of gross negligence or recurring or systemic negligence. In addition, when law enforcement came into possession of Appellant’s hard drive, the hard drive was defunct. Its internal components were damaged, rendering it inoperable. Moreover, Appellant never requested the hard drive’s return.[3] From this, it is difficult to infer that law enforcement’s retention of the property — during which it sought the hard drive’s repair — was intended to deprive Appellant of the use and enjoyment of his hard drive. Nor, is this a case where law enforcement should have known that it was depriv *50 ing Appellant of the use and enjoyment of his property. Hence, because there is no wrongful police conduct to deter, nor a pattern of negligent conduct to punish, I would not exclude the evidence obtained from Appellant’s hard drive.

. U.S. Const, amend. IV.

. See Herring v. United States, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); Hudson, 547 U.S. at 592, 126 S.Ct. 2159; Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363-65, 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (The Supreme Court “[has] repeatedly emphasized that the rule’s 'costly toll’ upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application” and the exclusionary rule should applied only "where its deterrence benefits outweigh its 'substantial social costs.' ”); Evans, 514 U.S. at 11, 115 S.Ct. 1185; Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473, (1986); Leon, 468 U.S. at 908, 104 S.Ct. 3405 (rejecting "[i]ndiscriminate application of *49 the exclusionary rule”). These cases make clear that there must be substantial deterrent benefits achieved as a result of applying the exclusionary rule. Absent a realistic possibility of deterring undesirable conduct, societal interests in punishing crime prevail. For a range of views considering the significance of Herring, see Tom Gold-stein, The Surpassing Significance of Herring, SCOTUSblog (Jan. 14, 2009, 11:32 AM), http:// www.scotusblog.com/2009/01/the-surpassing-signifícance-of-herring (”[W]e will at some point soon regard today’s Herring decision as one of the most important rulings in [the criminal procedure] held in the last quarter century," and concluding that Herring sets the bar to applying the exclusionary rule even higher than before); Richard McAdams, Herring and the Exclusionary Rule, University of Chicago Law School Faculty Blog (Jan. 17, 2009, 12:06 AM), http:// uchicagolaw.typepad.com/faculty/2009/01/ herring-and-the-exclusionary-rule.html ("Herring will transform the exclusionary rule from the standard remedy to the exceptional remedy."). But see Orin Kerr, Responding to Tom Goldstein on Herring, The Volokh Conspiracy (Jan. 14, 2009, 2:38 PM), http://www.volokh.com/posts/ 1231961926.shtml (disagreeing with Tom Gold-stein’s reading of Herring, stating that Herring is "a narrow and interstitial decision, not one that is rocking the boat”).

. A request for the return of property is relevant to a determination of whether there has been police misconduct because a request gives police notice that the continued retention of the property is harming the owner. In some cases, repeated requests for the return of property combined with an excessive delay in returning it could lead to an inference that the government was intentionally retaining property to interfere with an individual’s possessory interests. On the other hand, the absence of a request, as in this case, suggests that the police were not on notice that the owner was harmed, or potentially would be harmed, by the prolonged retention of the property. Therefore, there is no misconduct to be deterred.