2021 IL App (2d) 180193
No. 2-18-0193
Opinion filed March 10, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1108 |
| SAINT ALEXANDER, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    A grand jury charged defendant, Saint Alexander, with possession of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2014)), based on images that police recovered from his computer. Defendant moved to suppress the evidence. He contended that the police had traced the images to him by relying on records obtained through a grand jury subpoena served by Chris Covelli, a detective with the Lake County Sheriff's Office, who had allegedly conducted a rogue investigation. The trial court denied the motion, holding that Covelli had proceeded improperly but that defendant had not shown prejudice. After a stipulated bench trial, defendant was convicted and sentenced to 24 months' felony probation. He timely appealed.

¶ 2    On appeal, defendant contends first that Covelli violated the fourth amendment by obtaining from defendant's Internet service provider (ISP) the name and address of the person whose Internet protocol (IP) address corresponded to the computer at issue. He argues that the information was private and that the police needed a warrant based on probable cause to obtain it. Defendant contends second that the trial court erred in holding that he had not shown prejudice from Covelli's improper subpoena. Defendant acknowledges that our decision in *People v. O'Dette*, 2017 IL App (2d) 150884, bound the court but he urges us not to follow that opinion.

¶ 3    We hold first that Covelli's use of the subpoena did not violate the fourth amendment, as defendant lacked a reasonable expectation of privacy in the information supplied by the ISP. We hold second that defendant did not establish prejudice, as we must follow *O'Dette* in light of supreme court precedent. Therefore, we affirm.

¶ 4                                I. BACKGROUND

¶ 5    On April 28, 2015, Covelli signed criminal complaints charging defendant with 10 counts of child pornography. On May 20, 2015, the grand jury indicted defendant on these charges. He moved to suppress the evidence seized in the search of his residence.

¶ 6    The motion alleged the following facts. On April 15, 2015, Covelli issued a document entitled "GRAND JURY SUBPOENA DUCES TECUM" to Comcast, commanding it to produce "Any/All subscriber information, including terminated information, for the Comcast IP address: 71[.xxx] including but not limited to names, including names of account holders, physical address of where account was/is established, physical address of service location," and other information related to the IP address. It stated further, "You must comply with this request by sending legible copies to ATTN: Detective Covelli, Lake County Sheriff's Office, 25 S. Martin Luther King, Jr.

Ave., Waukegan, Illinois." The subpoena included Covelli's e-mail address and fax number and directed Comcast not to disclose the subpoena's existence to anyone else.

¶ 7    Defendant's motion alleged further that, on April 16, 2015, Comcast returned documents directly to Covelli. Covelli was not working at the direction of the grand jury. When he issued the subpoena, there was no grand jury convened to investigate defendant. Although documents obtained by a grand jury subpoena may not be disclosed (see 725 ILCS 5/112-6 (West 2014)), Covelli used the documents to obtain the search warrant for his residence and computer. On April 28, the warrant was executed.

¶ 8    Defendant's motion contended that Covelli did not consult with the grand jury until after the search. Moreover, the State's Attorney's office did not follow the statutory provision that allowed it to subpoena ISPs during investigations into the sexual exploitation of children. This provision required that the documents be returned to the chief judge of the circuit court (see 725 ILCS 5/115-17b(b) (West 2014)). Finally, the motion alleged in general language that the documents' use to obtain the warrant violated the fourth amendment.

¶ 9    The trial court heard the motion to suppress. Covelli testified on direct examination that, on March 9, 2015, he learned that a device with the IP address 71.*** was sharing apparent child pornography. An online database showed that the device was located in Lake County. Covelli ascertained that Comcast was the ISP for the device.

¶ 10    Covelli testified that he prepared the subpoena. On April 15, 2015, Carol Gudbrandsen of the State's Attorney's Office[1] approved it. Covelli sent the subpoena directly to Comcast. At that

---

[1] Gudbrandsen's position with the office is not identified in the report of proceedings or elsewhere in the record.

point, no complaint against defendant had been made to the grand jury. On April 16, 2015, Covelli received a response from Comcast. The response stated that, for the IP address 71.***, the "Subscriber Name" was V.F. and the "Service Address" was "*** Washington Street, Apartment *** in Waukegan." Covelli did not bring the response to the grand jury. He used the information to obtain a warrant to search the residence.

¶ 11    Covelli testified that, on April 28, 2015, he executed the warrant. Defendant and V.F. were present. Defendant told Covelli that he had resided with V.F. for several months and had child pornography stored on his computer. That day, he was arrested. On May 20, 2015, after defendant had been charged, Covelli testified before the grand jury. Before then, he had had no contact with the grand jury in the case.

¶ 12    Covelli testified on cross-examination that, in April 2015, he was a designated investigator for the grand jury. Comcast's response identified V.F. as the person who had the IP address; defendant was not mentioned. The search recovered a hard drive that defendant said contained child pornography. Covelli testified on redirect examination that he was aware of the order appointing him and many other police officers as grand jury investigators, but he had never viewed the document.

¶ 13    After hearing arguments, the trial court stated as follows. The facts were indistinguishable from those in *O'Dette*; indeed, many were identical. In *O'Dette*, Covelli, relying on the same order appointing him a grand jury investigator, issued a subpoena, identical in form to the one here, to the ISP for a computer with a Lake County IP address. *O'Dette*, 2017 IL App (2d) 150884, ¶ 3. In *O'Dette*, as here, the target of the subpoena sent the requested information to Covelli, not the grand jury, and Covelli used it to obtain a search warrant and secure charges, all before ever appearing

before the grand jury. *Id.* Thus, as in *O'Dette*, Covelli had obtained information in violation of grand jury subpoena rules.

¶ 14    Nonetheless, the court denied the motion to suppress, holding that defendant had not shown prejudice. Again, *O'Dette* informed the trial court decision. There, we relied primarily on *People v. Boston*, 2016 IL 118661. In *Boston*, a murder prosecution, an assistant state's attorney (ASA) obtained a grand jury subpoena to take the defendant's palm prints and fingerprints (he was in prison on an unrelated charge). The subpoena was made returnable to either the ASA or the investigator who was serving it as an agent of the grand jury. A police sergeant and a detective served the subpoena, a prison employee obtained the prints, and the State delivered the prints to the police crime laboratory. *Id.* ¶¶ 5-6. A palm print was inculpatory. Based on this evidence, the detective secured a warrant for a DNA sample. A test showed that the DNA was inculpatory. The sergeant then appeared before the grand jury and testified about the incriminating palm print and DNA sample. The grand jury indicted the defendant. *Id.* ¶¶ 7-8. See *O'Dette*, 2017 IL App (2d) 150884, ¶ 42.

¶ 15    The *Boston* defendant moved to quash the subpoena and suppress the palm print evidence. The trial court denied the motion, holding that the defendant had not shown prejudice. *Boston*, 2016 IL 118661, ¶¶ 9-10. Eventually, the supreme court held that the State had acted improperly; the subpoena was prepared by the ASA, not the grand jury, and made returnable to either the ASA or the investigator, neither of whom was an agent of the grand jury. *Id.* ¶ 40. However, the court held that the defendant had failed to show prejudice. Had the prints been returned to the grand jury, the State could still have obtained the evidence and sent it to the crime lab to be tested. *Id.* ¶ 41; see *O'Dette*, 2017 IL App (2d) 150884, ¶ 44.

¶ 16    Here, after a bench trial on stipulated evidence, the court found defendant guilty of one charge and the State dismissed the remaining charges. The court denied defendant's motion for a new trial and sentenced defendant to 24 months' felony probation. He timely appealed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant raises two claims of error. First, he contends that the denial of his motion to suppress was erroneous because the police needed a warrant to obtain the Internet service subscriber's name and location. Defendant relies on *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2018), which was issued after he appealed. Second, defendant contends that the trial court erred in holding that he had failed to show prejudice. Defendant acknowledges that *O'Dette* bound the court, but he contends that *O'Dette* was wrongly decided.

¶ 19    In reviewing a trial court's ruling on a motion to suppress, we accept the court's findings of fact unless they are against the manifest weight of the evidence, but we consider *de novo* the ultimate question of whether the evidence should have been suppressed. *People v. Jones*, 215 Ill. 2d 261, 268 (2005). As there are no factual disputes in this case, our review is *de novo*. We consider each issue in turn.

¶ 20    Defendant's first contention is an issue he did not raise in the trial court and is premised on his assertion that Covelli's subpoena to Comcast was a search under the fourth amendment. Here, he contends that he had a reasonable expectation of privacy in the subscriber information such that the police could not obtain it from Comcast without a warrant based on a judicial finding of probable cause. Thus, he reasons, the evidence seized from his residence was the fruit of Covelli's violation of the fourth amendment.

¶ 21    In his motion to suppress, we note that defendant alleged only in general terms that Covelli's use of the subpoena violated the fourth amendment; he did not argue specifically that the

fourth amendment protected the information. Instead, he relied on statutes and case law regulating the grand-jury subpoena process. Ordinarily, an appellant may not obtain a reversal based on an issue that was not raised in the trial court. *O'Dette*, 2017 IL App (2d) 150884, ¶ 51.

¶ 22     Nonetheless, there are reasons to disregard any forfeiture here.[2] First, *Carpenter* was not decided until after defendant appealed, and the judgment that it reversed denied the defendant's fourth-amendment claim. See *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016). Second, our opinion in *O'Dette* could be read to imply that the fourth amendment protects the type of information involved here—and it is important for us to clarify this holding. Third, because the pertinent facts in this case are undisputed, it would work no unfairness on the State to consider a purely legal argument not raised at the trial level. Fourth, the State does not argue that defendant's *Carpenter* argument is forfeited but responds on the merits. Fifth, a court of review may reach arguments not advanced at the trial level to maintain a sound body of law. See *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967). Therefore, we turn to defendant's first argument, which necessitates an exposition of *Carpenter*'s holding and reasoning.

¶ 23     In *Carpenter*, the Court initially framed the issue as "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2211. The records at issue were cell-site location information (CSLI). A "cell site" is a radio antenna or set of antennae to which a cell phone connects. Each time a cell phone does so, it

---

[2] We note that defendant did not raise a violation of the Illinois Constitution in the trial court; although we have overlooked forfeiture of defendant's fourth amendment arguments, we will not also overlook forfeiture of that issue.

generates a time-stamped record, the CSLI, that shows that the cell phone is within the cell site's coverage area. The proliferation of cell sites has resulted in smaller coverage areas. *Id.* at ___, 138 S. Ct. at 2211. Wireless carriers store CSLI for their business records and now collect location information from the CSLI generated by the use of cell phones. *Id.* at ___, 138 S. Ct. at 2212.

¶ 24    In *Carpenter*, a suspect in a series of robberies disclosed the cell phone numbers of several alleged accomplices to the FBI; the FBI identified other numbers that he had called around the time of the robberies. Based on this information, prosecutors applied for court orders to obtain cell phone records for Carpenter and several others. The prosecutors relied on a federal statute providing for compelled disclosure of certain telecommunications records upon the showing of reasonable grounds to believe that the records are relevant and material to an ongoing criminal investigation (see 18 U.S.C. § 2703(d) (2012)). Federal magistrates ordered Carpenter's wireless carriers to produce cell-site records covering more than four months. The government received 12,898 location points cataloging his movements, an average of 101 data points a day. *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2212.

¶ 25    At Carpenter's trial for robbery and other offenses, an FBI agent testified that, each time a cell phone taps into a network, the carrier logs a CSLI. The agent used the data to place Carpenter's phone near several robberies. Carpenter was convicted. The appellate court affirmed, holding that he lacked a reasonable expectation of privacy in the location information that the FBI had collected. He shared the information with his carriers by voluntarily conveying cell-site data to them to establish communication. *Id.* at ___, 138 S. Ct. at 2213; see *Carpenter*, 819 F.3d at 888.

¶ 26    In reversing, the Supreme Court reasoned as follows. The records that the government acquired "reveal[ed] the location of Carpenter's cell phone whenever it made or received calls." *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2214. Thus, the Court looked to two lines of case

authority. The first addressed a person's expectation of privacy in his physical location and movements. These cases distinguished between using a "beeper" to track a vehicle that officers are following visually as it is driven on a public highway and using a GPS to track a vehicle remotely for an extended period (or to track the driver or his cell phone). In both examples, the driver voluntarily discloses his location to others. But the former type of surveillance does not impinge on expectations of privacy; the latter does. *Id.* at ___, 138 S. Ct. at 2215; see *United States v. Knotts*, 460 U.S. 276, 281 (1983); *United States v. Jones*, 565 U.S. 400, 404-05, 426, 428 (2012).

¶ 27     The Court noted that, in the second line of cases, it "dr[ew] a line between what a person keeps to himself and what he shares with others." *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2216. These decisions applied the general rule that a person has no reasonable expectation of privacy in information that he voluntarily turns over to third parties, even when he assumes that the information will be used only for limited purposes. This type of information includes canceled checks, and other records of nonconfidential financial dealings, that a defendant turns over to his bank (*United States v. Miller*, 425 U.S. 435, 440-43 (1976)) and outgoing numbers dialed on a landline telephone (*Smith v. Maryland*, 442 U.S. 735, 742-43 (1979)). In these cases, the defendant " 'assume[s] the risk' " that the records will be divulged to police. *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2216 (quoting *Smith*, 442 U.S. at 745).

¶ 28     Turning to the case before it, the Court refused to extend the third-party doctrine of *Miller* and *Smith* to the "new phenomenon" of chronicling "a person's past movements through the record of his cell phone signals." *Id.* at ___, 138 S. Ct. at 2216. It is reasonable to expect that law enforcement agents will not secretly track a person's movements in such detail and over such a long period as to obtain "an all-encompassing record of the [person's] whereabouts." *Id.* at ___, 138 S. Ct. at 2217. Such easy access to so much data would enable law enforcement agents to learn

much about a person's private affairs. Moreover, the cell-phone site information reveals a person's past movements, which police could not otherwise easily learn. *Id.* at ___, 138 S. Ct. at 2218. Thus, the third-party doctrine ought not to be extended to this extreme situation, especially as the cell phone owner cannot avoid sharing the information unless he chooses not to use the phone at all. *Id.* at ___, 138 S. Ct. at 2220-21.

¶ 29    The Court held that, in general, the government must generally obtain a warrant supported by probable cause to obtain CSLI data. *Id.* at ___, 138 S. Ct. at 2221. The federal statute did not require probable cause; therefore, the government had violated Carpenter's fourth amendment rights. *Id.* at ___, 138 S. Ct. at 2221.

¶ 30    The Court stressed that its decision was "a narrow one." *Id.* at ___, 138 S. Ct. at 2220. It did not disturb the long-standing application of *Miller* and *Smith* to conventional surveillance methods or to "other business records that might incidentally reveal location information." *Id.* at ___, 138 S. Ct. at 2220.

¶ 31    Defendant contends that *Carpenter* applies to Covelli's acquisition of the subscriber identity and location information that Comcast disclosed. The State responds that *Carpenter*'s narrow holding does not apply here. The State notes that the Supreme Court dealt with information that enables law enforcement agents to closely track a person's movements over a long period— obtaining detailed information about his or her daily activities, including those in the past. By contrast, the State argues, the information that Covelli obtained did not enable him to track any person's movements but only to learn the physical location of a computer and its ISP subscriber's identity. We agree with the State.

¶ 32    Federal courts of appeal have refused to extend *Carpenter* to the fact pattern here. They have held that an ISP's information about the subscriber for a given IP address falls within the

third-party doctrine. Thus, they have allowed police to obtain this information without a warrant or probable cause.

¶ 33    In *United States v. Contreras*, 905 F.3d 853 (5th Cir. 2018), an undercover federal agent saw that a user employing an online pseudonym had uploaded child pornography to Kik, a mobile messaging application. A grand jury subpoenaed Kik and obtained the IP address from which the user had accessed Kik. The government then learned that the ISP for the IP address had ported the IP address to Frontier Communications. The grand jury subpoenaed Frontier. Frontier told it that the IP address was registered to the defendant's father at his family's home address. On this basis, another agent executed a warrant to search the residence, including for child pornography stored on computers. The defendant was charged with child pornography. He moved to suppress the evidence seized in the search, arguing in part that the government needed a warrant to obtain the Frontier records. The trial court denied the motion. The defendant entered a conditional guilty plea, reserving the right to appeal the ruling on the motion to suppress.

¶ 34    On appeal, the defendant argued that the motion to suppress should have been granted, in part because the government conducted a warrantless search by obtaining the records from Frontier. He relied on *Carpenter*. The appellate court disagreed. It noted that *Carpenter* had made a narrow exception to the third-party doctrine. The records in *Contreras* "f[ell] comfortably within the scope of the third-party doctrine." *Id.* at 857. They revealed only that the IP address was associated with the defendant's residence and "had no bearing on any person's day-to-day movement." *Id.* Therefore, defendant had no reasonable expectation of privacy in the records. *Id.*

¶ 35    In *United States v. Hood*, 920 F.3d 87, 88 (1st Cir. 2019), federal investigators learned that an individual using Kik under the name " 'rustyhood' " had posted child pornography. An investigator used the same federal statute as in *Carpenter* to obtain from Kik the subscriber

information, recent IP address, and recent IP logs of the account associated with "rustyhood." *Id.* at 89. Based on this information, the investigator determined that the three separate IP addresses that accessed the account belonged to two ISPs. Using the federal statute, he obtained information from these ISPs disclosing the IP addresses' physical locations. He determined that the defendant was "rustyhood." Hood was charged with child pornography. He moved to suppress the information gathered from Kik and the ISPs. *Id.* The trial court denied the motion. Hood entered a conditional guilty plea and was sentenced. *Id.* at 90.

¶ 36 On appeal, Hood argued that the denial of the motion to suppress was erroneous. He relied on *Carpenter*. The court of appeals disagreed, holding that the information acquired was within the third-party doctrine, as Hood had voluntarily disclosed it to Kik. *Id.* at 91. The court noted first that, unlike the cell-phone user generating CSLI, an Internet user generates IP address data "only by making the affirmative decision to access a website or application." *Id.* at 92. The court noted second that, unlike the CSLI in *Carpenter*, the IP address data did not itself convey any location information. *Id.* The court cited with approval *Contreras*, "the ruling of the one circuit" that had considered the same issue in the wake of *Carpenter*. *Id.*

¶ 37 *United States v. Morel*, 922 F.3d 1 (1st Cir. 2019), is also on point. There, law enforcement agents obtained the IP address of a computer that was used to upload child pornography to a website. They ascertained the ISP serving the IP address and subpoenaed the ISP to obtain the name and physical address of the IP address owner (Morel). A search of the computer revealed child pornography. Morel was charged accordingly and moved to suppress the evidence. The motion was denied, and he entered a conditional guilty plea. *Id.* at 3.

¶ 38    On appeal, Morel argued that reversal was required under *Carpenter*. The court followed its opinion in *Hood* and held that "the classic third-party doctrine analysis prevents Morel from showing that he had a reasonable expectation of privacy in the images uploaded." *Id.* at 10.

¶ 39    We agree with the foregoing opinions. *Carpenter* carved out a narrow exception to the third-party doctrine, based on the distinctive characteristics of CSLI data that enable law enforcement officers to track an individual's physical movements in detail over long periods, including retrospectively. These concerns are not implicated when police connect images on a computer to an IP address, ascertain the ISP that serves the IP address, and obtain from the ISP the user's identity and the physical location of the computer. A detailed itinerary of a person's movements is qualitatively different from a snapshot of his location as of the time that his user information is provided to a third party. Therefore, the police do not engage in a search within the meaning of the fourth amendment merely by obtaining from an ISP the subscriber information for a given IP address. Thus, although Covelli's subpoena violated statutory law as construed in *O'Dette*, it did not violate the fourth amendment, even in light of *Carpenter*.

¶ 40    With those cases in mind, we clarify *O'Dette*. In the course of explaining our holding, we characterized the documents that Covelli obtained from the ISP as "contain[ing] private information about [the] defendant" (*O'Dette*, 2017 IL App (2d) 150884, ¶ 54) and "materials that are impressed with a constitutionally protected privacy interest" (*id.* ¶ 57). In view of the federal decisions that we have followed, which were decided after *O'Dette*, we cannot adhere to the quoted language in *O'Dette*. We clarify that, without more, subpoenaing an ISP for user information connected with a given IP address is not a search within the fourth amendment, because the third-party doctrine defeats a claim that the owner of the IP address has a constitutionally protected expectation of privacy in that information.

¶ 41 We hold that the use of the subpoena to Comcast to obtain the name and address of the subscriber assigned the IP address connected to the child pornography at issue did not implicate the fourth amendment. *Carpenter* does not imply otherwise. Thus, we reject defendant's first claim of error.

¶ 42 We turn to defendant's second claim: that the trial court erred in holding that defendant failed to show prejudice from Covelli's improper use of the subpoena power. Defendant acknowledges that *O'Dette* is directly on point and requires us to hold otherwise. He contends that *O'Dette* was wrongly decided. We do not agree.

¶ 43 We have already set out at length the reasoning of *O'Dette* and *Boston*. Defendant contends that, in *O'Dette*, we invoked the "inevitable discovery" exception to the exclusionary rule without properly applying it. He argues that, because the defendant in that case had a privacy interest in the information that Covelli obtained from AT&T, the fourth amendment required a stricter test than the one that we used.

¶ 44 The State responds that *Boston*, which defendant does not cite in his appellate brief, is binding and applies here. The State also contends that, because defendant did not have a privacy interest in Comcast's information, Covelli's improper use of the subpoena was not a search. Thus, the State concludes, because the inevitable-discovery doctrine is a limitation on the exclusionary rule, which applies only to constitutional violations, it does not apply here.

¶ 45 In his reply brief, defendant contends that Covelli did conduct a search (a necessary premise of his first claim of error). He notes our statement in *O'Dette* in addressing the prejudice issue that "there is something to be said for [the] defendant's argument: ordinarily, an illegal search cannot be saved by an argument that the State could have obtained the evidence by following the proper procedure." *O'Dette*, 2017 IL App (2d) 150884, ¶ 65. Defendant argues that, instead of

applying the inevitable discovery doctrine or explaining why we did not, we "instead simply chose to follow [*Boston*]" even though that opinion "similarly did not engage in such an analysis."

¶ 46    Again, we clarify what we said in *O'Dette*. Insofar as the passage that defendant quotes may imply that Covelli's actions there were a search that implicated the fourth amendment, we now disapprove of that implication. As we held in addressing defendant's first claim of error, Covelli's actions violated Illinois law, but they did not implicate the fourth amendment.

¶ 47    Because we are not addressing a constitutional violation, we reject defendant's contention that we erred in *O'Dette* by resolving the prejudice issue without applying the inevitable-discovery doctrine. That doctrine is an exception to the exclusionary rule, which was judicially crafted to remedy constitutional violations, including searches that violate the fourth amendment. See *Nix v. Williams*, 467 U.S. 441, 444-48 (1984); *People v. Sutherland*, 223 Ill. 2d 187, 227-28 (2006). *Boston* requires us to hold that defendant did not establish prejudice. Defendant does not argue that *Boston* is factually distinguishable from this case. (He is also mistaken that we "simply chose" to follow our supreme court. As the appellate court, we did not have the luxury of choice.) Defendant's second claim of error fails.

¶ 48    Before we close, we must emphasize strongly that our refusal to find either a fourth amendment violation or prejudice from Covelli's unauthorized and freewheeling abuse of the grand jury's subpoena power is a doctrinal necessity, as it was in *O'Dette*. In no way do we condone such abusive conduct. Although the laws regulating grand jury subpoenas do not require reversal here, and did not in *O'Dette*, neither are these laws merely advisory.

¶ 49    At the hearing on defendant's motion to suppress, the assistant state's attorney admitted, "[W]e believe and we acknowledge that the method that was being used with the grand jury during

this period of time needed improvement" and that "[t]hose improvements have been made." We trust that these improvements will end the abuses that we have confronted here and in *O'Dette*.

¶ 50                                    III. CONCLUSION

¶ 51    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 52    Affirmed.

---

**No. 2-18-0193**

---

| | |
|---|---|
| **Cite as:** | *People v. Alexander*, 2021 IL App (2d) 180193 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 15-CF-1108; the Hon. James K. Booras, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd and Thomas A. Lilien, of State Appellate Defender's Office, of Elgin (Richard J. Dvorak, of Dvorak Law Offices, LLC, of Willowbrook, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---